MOORE v. NATIONAL WATER-TUBE BOILER CO.

(Circuit Court, D. New Jersey.    November 29, 1897.)

1. PATENTS—LICENSES—ESTOPPEL OF LICENSEE.
    One who has manufactured and used a patented device under a license cannot, in an action for royalties, set up the invalidity of the patent.

2. SAME.
    A licensee who agrees to manufacture only machines containing the patented improvement is not liable for royalties on machines which, in violation of this stipulation, do not contain the improvement of the patent.    Nor, in an action by the licensor to recover royalties, can there be a recovery of damages for this breach of the contract.

3. SAME—ACTION FOR ROYALTIES—SET-OFF.
    In an action to recover royalties under a license, the defendant cannot set off a claim for damages for alleged failure of the licensor to make a formal transfer of patents subsequently obtained, which he had agreed to assign to the licensee.

This was a suit in equity by Edward J. Moore against the National Water-Tube Boiler Company for an accounting of royalties alleged to be due under a patent.

Alan H. Strong, for complainant.
John S. Voorhees, for defendant.

KIRKPATRICK, District Judge.    The record in this case discloses that Edward J. Moore, the complainant, being the owner of certain patent rights particularly set out in the bill of complaint, entered into an agreement with William E. Kelley, in and by which he assigned, transferred, and set over to said Kelley the sole and exclusive right, during the life of said patents, to manufacture and sell, in a certain territory, sectional steam boilers and steam generators, containing the improvements referred to in all or any of the claims of said letters patent, the said rights to include all styles and kinds of sectional steam boilers and steam generators embodying the improvements referred to in any or all of the claims of said letters patent, and all improvements relating thereto that the complainant might devise or acquire during the continuance of the agreement.    The complainant also agreed that, whatever improvements or inventions he might make during the continuance of the agreement which would improve the efficiency or reduce the cost of manufacturing said steam boilers, he would inform the party of the second part of the same, and, if patentable, and patents obtained therefor, assign the right to use the same to the party of the second part.    In consideration of the transfer of this exclusive right, the defendant stipulated that during the continuance of said agreement he would not engage in the manufacture of any other water-tube sectional boilers than those covered by said agreement, and agreed to pay the sum of one dollar per horse power on each complete steam boiler or steam generator made and sold under said agreement.    Kelley assigned the contract entered into between him and the complainant, with complainant's assent, to the defendant corporation, who accepted the same, and continued the manufacture and sale of water-tube boilers, and paid com-

plainant royalties thereon.    The agreement, among other things, provided for its termination at the option of the party of the second part thereto, or his assigns, upon giving three months' notice to the party of the first part.    In accordance therewith, the defendant company, on the 14th day of May, 1894, gave notice to the complainant that, at the expiration of three months from the date thereof, it would cease building steam boilers and generators under said agreement, and that it would then surrender said agreement, and pay the royalty due, which notice was accepted by the complainant.    The complainant claims that the defendant has not paid him all the royalties to which, under the agreement, he is entitled.    The bill is filed for an accounting, and the prayer is for a decree directing the payment of such sum or sums of money as may be found due.    The defendant's answer admits the execution of the agreement by the complainant and Kelley, and the assignment by Kelley to the defendant, and the termination of the same pursuant to notice, and admits that there is due the complainant, for royalties on water-tube boilers sold by it, the sum of $682, and sets out in detail the specific boilers made and sold by it upon which said royalty was due, and which it is willing to pay.    It is not disputed that other water-tube boilers than those so specified have been manufactured and sold by the defendant during the continuance of the agreement; and it is admitted that contracts were made by the defendant during the same period for the manufacture and sale of still other water-tube boilers, which were not completed until after the expiration of the contract.    The controversy between the parties relates to these two classes of boilers, and the question to be determined is whether, under the circumstances, they are within the terms of the agreement, and the defendant liable for royalties thereon.

As has been said, it is admitted that water-tube boilers were manufactured and sold by the defendant during the continuance of the agreement, and, further, that they contained at least one of the devices of the complainant for which a patent had been obtained after the execution of the agreement, and which the defendant was entitled and permitted to use.    No formal transfer of the patented device had been made, but it was used by the defendant under a claim of right, and royalties had been paid by the defendant for the manufacture and sale of boilers in which it had been incorporated.    The defendant now insists that the complainant is not entitled to royalty on these boilers, because the patent for the device was invalid and void. The patented device was used by the defendant under the license acquired by the contract, and it cannot, when asked to pay the royalty provided therein, set up the invalidity of the claim of the patent.    The validity of a patent cannot be determined in a suit against licensee for royalties, nor can the holder of a license deny the validity of a patent which he enjoys under it.    3 Rob. Pat. § 1252.    In Lawes v. Purser, 6 El. & Bl. 932, the plaintiff, a patentee, had licensed the defendant to manufacture the article covered by the patent.    The licensee refused to pay the royalties, and, being sued for the same, pleaded that the patent was void.    The plaintiff demurred.    The court, in giving judgment for plaintiff, said: "It would be monstrous if the defendant, after such an agreement acted upon, could on this ground refuse

payment." To the same effect are the cases Covell v. Bostwick, 39 Fed. 421; Marston v. Swett, 82 N. Y. 528.

The remaining boilers concerning which there is dispute are those for which orders were received, and upon which work was done during the continuance of the agreement, which were not delivered, set up, or completed until after its expiration, under the term of the notice given by defendant, and which contained none of the complainant's patented devices. The contract provides that there shall be paid one dollar per horse power for each complete steam boiler or generator made and sold under the agreement; that is to say, in pursuance of its terms. The defendant agreed that he would not engage in the manufacture and sale of any other water-tube boilers than those protected by the complainant's patents. These were the boilers to the manufacture and sale of which it was limited, and for which the royalty was to be paid. A failure to manufacture and sell the boilers containing the complainant's patented device worked a forfeiture of the agreement, but did not involve the payment of royalties. The boilers which do not contain the complainant's patented device, or any of them, are not such as are manufactured and sold under the terms of the agreement, but expressly contrary thereto, and no royalty is payable thereon. It may be that the defendant derived a benefit from its control of the Moore patents, and that its failure to incorporate these devices in the boilers made and sold by him during the continuance of the agreement was an injustice, and worked an injury to the complainant; but, if so, he cannot recover damages in this action, which is brought for royalties payable under the terms of the contract. There appear to have been one or two boilers which are not included in either class above mentioned. I refer to the Zell boiler, which was "rebuilt." It was not merely repaired; it was rebuilt. It was a complete steam boiler, made and sold by the defendant under the terms of the contract, and a royalty should be paid for its 166-horse power. Order 499 was for a boiler "traded for one previously sold." It was itself a complete steam boiler, made and sold under the contract, and it, too, is subject to a payment of royalty. If the boiler which had been previously made and sold, and which was accepted as part payment, should again be sold, no royalty would be payable thereon.

As to the whole case the defendant contends that it is entitled to set off, against any royalties for which it is liable, the damages which it says it has sustained by the failure of the complainant to assign to it all the patents which he had taken out for additional improvements made in water-tube boilers during the continuance of the agreement, and for failure to protect it from infringements. The testimony discloses but one infringer (a Mr. Gill), who, upon the demand of the complainant, desisted from the use of the patent. In causing the infringer to discontinue the use of the patented device, complainant performed his full duty required by the agreement. Foster v. Goldschmidt, 21 Fed. 70. The defendant appears to have had the use of the complainant's improvements, and the undisturbed use of the patents relating to steam boilers granted complainant subsequent to the agreement. If entitled to damages for the failure of complainant to make a formal transfer,

they cannot in this suit be set off against the complainant's claim for royalty.

It follows from what has been said that the complainant is entitled to recover the amount of royalties admitted to be due in the defendant's answer, and the sum of one dollar per horse power for each complete steam boiler or generator containing any of his patented devices made and sold by the defendant prior to the 14th day of August, 1894, deducting therefrom such allowances as, in order to induce sales or otherwise, he has voluntarily agreed to make therefrom. Let a decree be prepared in accordance with these views.