CONSOLIDATED RUBBER TIRE CO. et al. v. FINLEY RUBBER TIRE
CO. et al.

FINLEY RUBBER TIRE CO. et al. v. CONSOLIDATED RUBBER TIRE
CO. et al.

(Circuit Court, N. D. Georgia. June 2, 1902.)

1. PATENTS—INVENTION—RUBBER TIRE WHEELS.
   The Grant patent, No. 554,675, for a rubber tire wheel, shows a com-
   bination of elements in a rubber tire, which, although such elements
   severally were old, brings them to bear in such way and with such re-
   lation to each other as to differentiate such tire from all prior inven-
   tions, and to produce new and useful results, such as to re-enforce the
   presumption arising from the issuance of the patent, and sustain the
   claim of invention, as distinguished from the mere application of me-
   chanical skill. Such patent also *held* infringed.

2. SAME—ESTOPPEL TO DENY VALIDITY—LICENSE.
   One who obtained exclusive rights under a patent, to run during its
   life, by a contract of license, in which he acknowledged its validity,
   which rights he has sold to another for a valuable consideration, is
   estopped to contest the validity of such patent; and the fact that the
   owner of the patent has also assigned or transferred its rights under
   the contract does not work such a novation as to relieve him from the
   operation of such estoppel.

In Equity. Suit for infringement of letters patent No. 554,675,
issued to Arthur W. Grant February 18, 1896, for a rubber tire wheel.
On final hearing.

Paul A. Staley, Border Bowman, Hoke Smith, and H. C. Peeples,
for complainants.

H. A. Toulmin, D. S. Craig, and Edmund Wetmore, for defendants.

NEWMAN, District Judge. In this case a bill was filed by the
Consolidated Rubber Tire Company, the Rubber Tire Wheel Com-
pany, and the Munford Rubber Tire Company, complainants, against
the Finley Rubber Tire Company, Samuel Everett Finley, J. J. Coulter,
and W. D. Hoyt, defendants. The purpose of the bill was to enjoin
the infringement by the defendants of patent No. 554,675, issued Feb-
ruary 18, 1896, to A. W. Grant, for a rubber tired wheel. The de-
fendants answered the bill, denying that they had in any way in-
fringed said patent, and the defendants J. J. Coulter and W. D. Hoyt
disclaimed any interest in or connection with the Finley Rubber Tire
Company or Samuel E. Finley in the business of making or selling
rubber tires. Subsequently a cross bill was filed by the Finley Rubber
Tire Company and Samuel E. Finley, the main purpose of which was
to enjoin the complainants from prosecuting certain suits in other dis-
tricts against the agents of the Finley Rubber Tire Company engaged
in selling its rubber tires. On the cross bill a temporary restraining
order was granted by Circuit Judge Shelby, and afterwards the case
came on in the circuit court on the hearing for preliminary injunction
on the main bill, and on the application for injunction on the cross bill.
At this hearing an order was made granting to the complainants an in-
junction pendente lite unless the Finley Rubber Tire Company would
enter into a bond in the sum of $10,000 to indemnify the complainants

against any damages which they might sustain in the premises, which bond was given. It was further determined that it was unnecessary for the complainants to prosecute any separate suits, inasmuch as the whole matter could be determined in the main litigation in this court, and the injunction on the cross bill was continued of force. 106 Fed. 175. Thereafter, and before the final hearing, an intervention was filed by the Goodyear Tire & Rubber Company, alleging that it was the real party in interest, and asking to be made a party defendant in the case; and, after hearing, the prayer of the intervener was granted, and it was made a party defendant. There has now been a final hearing in the case. At this hearing voluminous testimony was produced, taken at different points in the country by special examiners appointed by the court; also considerable documentary evidence, and a great quantity of rubber tires,—principally tires which had been in use, and showing the effect of such use in various respects. There was able and elaborate argument for both parties, accompanied by exhaustive briefs. The briefs then filed have, since the argument, by consent of the court, been added to by supplemental briefs filed by the respective counsel.

The first question for consideration in the case is that raised by the defendants as to novelty and invention in the Grant patent, No. 554,-675. The claim in the Grant patent is as follows:

"(1) A vehicle wheel having a metallic rim with angularly projecting flanges to form a channel or groove with tapered or inclined sides; a rubber tire, the inner portion of which is adapted to fit in said groove or channel, and the outer portion having sides at an angle to the inner portion, the angle or corner between the outer and inner portions being located within the outer periphery of the flanges; and independent retaining wires passing entirely through the inner portions of said tire, and also within the outer peripheries of the flanges,—substantially as described. (2) A vehicle wheel having a metallic rim with outwardly projecting flanges at an angle to the plane of said wheel, so as to form a channel or groove having tapered or inclined sides; a rubber tire, the inner portion of which is adapted to fit in said tapered groove or channel, and the outer or exposed portions formed at an angle thereto, the angle or corner between the said portions being placed within the outer periphery of said flanges; openings extending entirely through the unexposed portion of said tire; and independent retaining wires in said openings, and a re-enforcing strip of fibrous material placed at the bottom of said tire, and wholly within said flanges,—substantially as specified."

The contention for the defendants is that this invention claimed by Grant is a mere combination or aggregation, as they term it, of old elements, each of which was well known to the art long before the date of the Grant patent. Defendants claim that combining these various elements required only ordinary mechanical skill, and involved no discovery and no new principle. Speaking generally, the three devices involved in Grant's patent were (1) a rubber tire; (2) a metallic rim with sloping sides, in which the tire is seated; and (3) two wires running through the tire to hold it in place, the wires being located within the outer periphery of the flanges of the rim. The question as to whether this combination of separate parts by Grant was novel, so as to constitute a patentable invention, has been before the circuit court for two districts. In the case of Rubber Tire Wheel Co. v. Columbia Pneumatic Wagon Wheel Co., 91 Fed. 978, the question is

discussed at length by Judge Thomas in the United States circuit court for the Southern district of New York. The conclusion reached by Judge Thomas, as embodied in the third headnote to the case, is as follows:

"The Grant patent, No. 554,675, for a rubber tired wheel, discloses patentable invention, and was not anticipated by anything in prior patents, either English or American, though the several parts which constitute the essential features of the invention were each used in different combinations in previous inventions."

Quite recently the same question was before Judge Wing, in the United States circuit court for the Northern district of Ohio, and an opinion filed, which has not yet been reported, but which I have before me. A brief extract from that opinion will show Judge Wing's view of the matter:

"In view of the able and elaborate opinion delivered by Judge Thomas, I do not deem it necessary to go into particularities with respect to the reasons for my conclusion. Suffice it to say that, upon an independent examination of the record, I have come to the conclusion, which, in brief, is this: that, while the elements of the complainants' combination are, each of them, old and well known, this particular combination of shape of rubber and of flange, and the position of the retaining wires, has not been shown in any previous patents or other publications; that the device, when completed and put upon the market, practically displaced all other forms of tires; that there is abundant evidence of the great usefulness and merit of the invention; that, deductively, the combination is novel and useful, and the patent valid."

It is claimed by the defendants that the decision of Judge Thomas should not be considered, because it was collusively obtained by the parties to that case. On this subject, Judge Wing, in the opinion just referred to, says:

"I have examined carefully the record, and have read with interest the opinion of Judge Thomas, in the case of Rubber Tire Wheel Co. v. Columbia Pneumatic Wagon Wheel Co. (C. C.) 91 Fed. 978. It is contended by the defendants that the decree in that cause was collusively obtained by the parties. It is in no wise suggested that the opinion of the learned judge was in any sort the result of collusion."

It appears from what has been presented to this court that the case before Judge Thomas was argued by counsel who had no knowledge whatever of any negotiations that were pending between the parties for a settlement of their differences, and that Judge Thomas had no knowledge whatever, up to the time the opinion was filed, of any such negotiations. Subsequently, and before the decree was entered in the case, it seems that the attention of the court was called to an adjustment between the parties of their differences, and probably the decree would be ineffective for certain purposes; but the opinion of the learned judge as persuasive authority, and as a determination of the question at issue for recognition under the rule of comity, it seems to me, is in no wise affected. It is claimed by the defendants that the case as made in this court differs materially, as to the evidence submitted, from the case before Judge Wing. The claim is that additional patents have been presented which antedate the Grant patent, and strengthen defendants' case as to its lack of novelty. These are what are known as the "Prudden Cushion Tire," the "Rogers Cushion

Tire," the "Fisher or Gendron Cushion Tire," and the "Frazier Two-Wire Sulky Tire." These patents undoubtedly must be added to those before the courts in former cases, which contain some of the parts embodied in the Grant combination.

The courts enter upon the investigation of the question as to whether a particular device or combination of devices is patentable with the prima facie case in favor of the patent, by reason of its issuance by the patent office. In Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970, 29 L. Ed. 1017, it is said in the opinion of the court:

"The burden of proof is upon the defendants to establish this defense. For the grant of letters patent is prima facie evidence that the patentee is the first inventor of the device described in the letters patent, and of its novelty. Smith v. Vulcanite Co., 93 U. S. 486, 23 L. Ed. 952; Lehnbeuter v. Holthaus, 105 U. S. 94, 26 L. Ed. 939. Not only is the burden of proof to make good this defense upon the party setting it up, but it has been held that 'every reasonable doubt should be resolved against him.' Coffin v. Ogden, 18 Wall. 120, 124, 21 L. Ed. 821; Washburn v. Gould, 3 Story, 122, 142, Fed. Cas. No. 17,214."

In Palmer v. Village of Corning, 156 U. S. 342, 15 Sup. Ct. 381, 39 L. Ed. 445, it is said in the opinion of the court:

"There is no doubt that in this, as in all similar cases, the letters patent are prima facie evidence that the device was patentable. Still we are always required, with this presumption in mind, to examine the question of invention vel non upon its merits in each particular case."

In Western Electric Co. v. Home Tel. Co. (C. C.) 85 Fed. 649, in the opinion rendered in the circuit court by Judge Toulmin, this language is used:

"The burden of overcoming the prima facie case made out by the production of the patent is upon the defendant, and the defense of want of novelty must be clearly established before a court will be justified in setting aside the patent on this ground."

We enter upon the investigation of the question in the case at bar with this rule in mind, and are to determine whether it has been successfully established by the proof in this case that the rubber tire for which Grant was allowed a patent does not contain the elements of invention and of novelty, but, on the contrary, is a mere aggregation of parts which were well known before, and which it required only mechanical skill to put together in their present shape.

Various difficulties have been experienced in the practical construction of rubber tires ever since their use was first attempted; some of the principal of these difficulties being the rubber slipping off, the cutting of the rubber by the rim in which it is located, and the failure to resist rough blows and lateral strains. These difficulties, it is claimed, have been largely, if not wholly, obviated by the method of construction of the Grant tire. It is claimed that the shape of the rubber, namely, the outward slant of the unexposed portion of the rubber, and its close fitting against the side of the channel iron up to the point of the obtuse angle or corner, and then the slight inward angle towards the center, leaving a space above the angle and between the rim of the channel iron and the rubber, co-operating with the two-wire fastening running through the rubber at a point opposite its widest

portion, causes the rubber, when exposed to an extraordinary lateral blow or force on one side, to rise in the channel iron and turn upon the corner or angle on the side opposite to that upon which the blow or force is received, as upon a pivot, and, after the force is removed, to reseat itself in the channel iron.   In this connection it is claimed that the "re-enforcing strip of fibrous material" placed at the bottom of the rubber, and wholly within the flanges, aids materially in this result.   It is further claimed that the space between the channel iron and the rubber above the corner or obtuse angle in the rubber allows the rubber to yield in either direction without being cut by the rim, as was the case in other character of tires.   It is also claimed for the Grant construction that the location of the wires opposite the widest portion of the rubber, and within the unexposed portion, prevents cutting through the rubber by the wires to which former tires were subject. It is urged by the defendants that the Grant patent was not allowed by the patent office until he amended his claim by claiming specifically that the obtuse angle or corner was located within the outer periphery of the rim.   The file-wrapper evidence submitted by defendants shows that Grant's claim was amended substantially as indicated.   There is a large amount of evidence in this case which shows conclusively that the Grant patent has taken a prominent place in the market, and that its commercial value is large and assured.   It is claimed that it has almost entirely superseded other forms of rubber tires, but, whether this be true or not, it certainly has met with extensive use.

Reference to a few authorities as to patentability of combinations of old elements may be valuable.

In Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177, the court, discussing this question, says:

"It is further argued, however, that, supposing the devices to be sufficiently described, they do not show any invention, and that the combination set forth in the fifth claim is a mere aggregation of old devices, already well known, and therefore it is not patentable. This argument would be sound if the combination claimed by Webster was an obvious one for attaining the advantages proposed,—one which would occur to any mechanic skilled in the art. But it is plain from the evidence, and from the very fact that it was not sooner adopted and used, that it did not for years occur in this light to even the most skillful persons. It may have been under their very eyes; they may almost be said to have stumbled over it; but they certainly failed to see it, to estimate its value, and to bring it into notice. Who was the first to see it, to understand its value, to give it shape and form, to bring it into notice and urge its adoption? is a question to which we shall shortly give our attention. At this point we are constrained to say that we cannot yield our assent to the argument that the combination of the different parts or elements for attaining the object in view was so obvious as to merit no title to invention. Now that it has succeeded, it may seem very plain to any one that he could have done it as well. This is often the case with inventions of the greatest merit. It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result, never attained before, it is evidence of invention. It was certainly a new and useful result to make a loom produce fifty yards a day, when it never before had produced more than forty; and we think that the combination of elements by which this was effected, even if those elements were separately known before, was invention sufficient to form the basis of a patent."

In Packing Co. v. Magowan (C. C.) 27 Fed. 362, Judge Dixon, in the circuit court for New Jersey, sustained the patent, which seems to have been attacked very much as the Grant patent is here, and used this language in the conclusion of the opinion:

"The complainant's patent is nearly on the line dividing invention from mechanical skill, but, after carefully comparing it with the exhibits which were put in to show anticipation and its lack of patentability, I am of the opinion that the combination reveals invention, not so much because the packing is more elastic by reason of the addition of pure hard rubber, but because the patent discloses a new and better method of obtaining a tight joint between the packing and the piston rod than has been obtained by any other combination of elements, new or old. It is a fact not to be overlooked, and has much weight, that the product manufactured under it went at once into such extensive public use as almost to supersede all packing made under other methods. Such a fact is pregnant evidence of its novelty, value, and usefulness, and accounts for the defendant's infringement."

That case was before the supreme court of the United States (141 U. S. 332, 12 Sup. Ct. 71, 35 L. Ed. 781), and the decision of the court below affirmed.

In Manufacturing Co. v. Adams, 151 U. S. 139, 14 Sup. Ct. 295, 38 L. Ed. 103, the supreme court say:

"Where the patented invention consists of an improvement of machines previously existing, it is not always easy to point out what it is that distinguishes a new and successful machine from an old and ineffective one. But when, in a class of machines so widely used as those in question, it is made to appear that at last, after repeated and futile attempts, a machine has been contrived which accomplishes the result desired, and when the patent office has granted a patent to the successful inventor, the courts should not be ready to adopt a narrow or astute construction fatal to the grant."

In Seabury & Johnson v. Am Ende, 152 U. S. 561, 14 Sup. Ct. 683, 38 L. Ed. 553, the supreme court, discussing a case where lack of novelty or patentable invention was asserted, said:

"Undoubtedly this evidence shows that the specific qualities of glycerin and of boracic acid were known, and that those articles had been successfully used in the instances narrated. But we agree with the court below in thinking that this evidence does not disclose that any one prior to Am Ende accomplished what he has described and claimed; that the fact that others had done something quite similar, and had used separately, or in different combinations, the ingredients of his claim, should not affect his patent. All that is described in the prior publications the defendant may use with perfect immunity."

The case of Niles Tool Works v. Betts Mach. Co. (C. C.) 27 Fed. 301, seems to me to lay down very carefully and accurately the rule that should prevail in determining whether or not a combination is patentable. In the opinion in that case it is said:

"The propositions established in these cases [quoting several supreme court cases] are that a combination is patentable (1) if it produces new and useful results, though all the constituents of the combination were well known and in common use before the combination was made, provided the results are a product of the combination, and not a mere aggregate of several results, each the product of one of the combined elements; (2) if it produces a different force, effect, or result in the combined forces or processes from that given by their separate parts, and a new result is produced by their union; (3) if it either forms a new machine of distinct character or

formation, or produces a result which is not the mere aggregate of separate contributions, but is due to the joint and co-operating action of all the elements; (4) when the several elements of which it is composed produce by their joint action either a new and useful result, or an old result in a cheaper or otherwise more advantageous way."

Applying the rules thus laid down to the facts in the present case, it results to my mind that the Grant tire is a patentable invention. It brings to bear all the elements composing it in such way and with such relation to each other as differentiates it from all former patents, and the method of using the various elements involves invention, as distinguished from the mere application of mechanical skill and knowledge. Even if I entertained doubt upon this question, the decisions of Judge Thomas and Judge Wing which have been referred to would cause me to resolve the doubt in favor of the view entertained by them, as expressed in their opinions.

But whether the foregoing conclusion is correct or not, the defendant Samuel E. Finley is clearly estopped from setting up the invalidity of the Grant patent. On the 10th day of December, 1897, Finley entered into a contract with the Rubber Tire Wheel Company, providing for the sale by Finley of the Rubber Tire Wheel Company's tires. Finley obtained by this agreement, in the states of North Carolina, South Carolina, Georgia, Florida, Alabama, Mississippi, Louisiana, Texas, and Virginia, "the exclusive right to sell and ship such rubber tires throughout the said eight states, and not elsewhere." This contract was subject to the rights of the Hartford Rubber Works Company under the contract between it and the Rubber Tire Wheel Company of September 14, 1897. Finley paid for this $7,500,—$6,500 by a patent which was transferred to the Rubber Tire Wheel Company (No. 594,468), and the other $1,000 at periods named in the agreement. In the ninth clause of the contract it is provided as follows:

"In consideration of the above license and conditions, and covenants thereof, the second party hereby acknowledges the validity of the patents referred to, and further agrees not to make, use, or sell any other rubber tires than those covered by said patents during life of said patents, or either of them; but, if this contract is sooner terminated by the fault of the first party, said second party may thereafter handle other rubber tires."

The eleventh clause provides that:

"This license is personal to said second party, and same shall not be assigned, either by act of the party or by operation of law, without the written consent of the said first party; but said first party agrees to consent to a transfer of this license by said second party, or his executor or administrator, to any person or persons of good business standing and financial strength, in which event this license shall be personal to such assignee, and not be subject to further assignment by him or by operation of law. But said second party shall, subject to the above provisions, have the right to associate with himself at any time during the contract a partner or partners of good moral and business reputation and financial strength, but this contract shall be nonassignable by said partnership, except as provided above in case of assignment of said second party individually."

On the 22d day of January, 1898, this contract was amended by allowing Finley to associate with him as a partner Edward S. Munford, and granting to Munford all the rights, privileges, and benefits of the license as fully as the same are granted to Finley; Munford to be

bound by the terms and conditions of the license between the Rubber Tire Wheel Company and Finley. On the same day Finley assigned to Munford a one-half interest in this license and agreement. A second agreement was made on the 2d day of May, 1898, by which Finley and Munford were authorized to associate with themselves as a partner Frank Hawkins, and granting to Hawkins all the rights, privileges, and benefits of the contract; he to be bound by the terms and conditions of the same. In pursuance of this agreement a one-third interest in all their rights, benefits, and privileges under this license and agreement was assigned by Finley and Munford to Hawkins. On June 23, 1898, with the consent of the Rubber Tire Wheel Company, Finley, Munford, and Hawkins transferred all their rights and interest in the contract to the Munford & Finley Company, Incorporated; the name of the company being afterwards changed to the Munford Rubber Tire Company. The consideration from Munford to Finley was $2,500 cash, and $2,500 additional to be put into the business; the $5,000 to remain in the business as the capital of the firm; and the consideration from Hawkins to Munford and Finley was $8,000. Subsequently Hawkins sold his interest in the Munford Rubber Tire Company to Munford, and thereafter Finley sold his interest in said company to Munford. The answer made by the defendant Finley to the claim of estoppel, as I understand it, is: First, that the right which Finley acquired by his agreement or license with the Rubber Tire Wheel Company was only to assemble or put together the parts composing the tires, and to put the same on the market, and that he did not acquire an interest in the patent, or an interest in such way as to work an estoppel against him; and, second, that there has been a novation of the contract, in that, since Munford became sole owner of the rights originally conveyed by the Rubber Tire Wheel Company to Finley, he has made a new contract with the Consolidated Rubber Tire Company. I do not consider either of these positions tenable. The right which Finley acquired by the contract of December 10, 1897, was an exclusive right to sell the tires of the Rubber Tire Wheel Company in the territory heretofore mentioned. That right was conveyed, by the intermediary steps heretofore set out, wholly to Munford; and it would work little profit to Munford to have obtained this right if the patent by virtue of which the Rubber Tire Wheel Company was authorized to make such an exclusive grant should be invalidated. Finley, having recently received a valuable consideration for the exclusive right to sell the Grant patent in certain states, certainly cannot be heard in a court of equity when he seeks to invalidate this patent as against his assignee.

As to the matter of alleged novation of the contract, it appears from the record that Arthur W. Grant conveyed to the Rubber Tire Wheel Company all his right, title, and interest in letters patent No. 554,675, and that subsequently, in October, 1899, 294 shares of the stock of the Rubber Tire Wheel Company were transferred to one Emerson McMillen as trustee for the Consolidated Rubber Tire Company, its successors and assigns; the declaration of trust reciting that the Consolidated Rubber Tire Company has purchased the stock, and that McMillen holds the same in trust. Substantially, as I understand

from the record and from the admissions of counsel, the stock of the Rubber Tire Wheel Company is held by the Consolidated Rubber Tire Company.    It is true that, after Munford acquired all the stock of the Munford Rubber Tire Company, some new arrangement as to prices, royalties, and other details was entered into between the Consolidated Rubber Tire Company and the Munford Rubber Tire Company.    The contract between Finley and the Rubber Tire Wheel Company was made personal as to Finley, but there appears to be no reason whatever why the Rubber Tire Wheel Company should not, by some such arrangement as that disclosed in the record, organize or cause to be organized an auxiliary company, or a company to which it would transfer its stock, and the latter company acquire all the rights, by proper assignment, that the Rubber Tire Wheel Company had obtained by the license agreement with Finley.

Counsel for defendants in this case rely upon a decision of Judge Lacombe in Manufacturing Co. v. Heineken (C. C.) 37 Fed. 686.    An examination of that case shows that the facts are wholly unlike the facts here.    Indeed, the court in that case says:

"The circumstances that he shared in the profit obtained from the sale to Winzer, and would thus be estopped in pais from questioning the character of what was sold, might be availed of by a subsequent grantee, who stood in Winzer's shoes, but no authority is cited which would secure the same benefit to the original circulator of an invalid patent."

Even under this authority, Finley would not be heard to set up the invalidity of the Grant patent against Munford.

The defendants also rely on the case of Manufacturing Co. v. Gormully, 144 U. S. 224, 12 Sup. Ct. 632, 36 L. Ed. 414.    I do not think that case is controlling in this case.    In that case Gormully became the licensee of the Pope Manufacturing Company to manufacture and sell bicycle tires.    The agreement recited that the Pope Manufacturing Company was the owner of 65 patents, and Gormully was licensed to manufacture in the city of Chicago bicycles of certain sizes, embodying the inventions set forth in 15 of the patents.    An examination of the opinion delivered in that case in the circuit court by Judge Blodgett (34 Fed. 877), and of the opinion of the supreme court, will show that it is in no way applicable to a case where a licensee under one patent conveys his rights under the license agreement, and then sets up a competitive business in the same territory, and litigation arises, as in this case.

There are some cases, however, that I think are applicable to the facts in the case now before this court.    The case of Burr v. Kimbark (C. C.) 28 Fed. 574, was decided by Judge Blodgett, who participated in the circuit court in the case of Manufacturing Co. v. Gormully, supra.    The syllabus will show what was determined, and is as follows:

"Where defendant had been a licensee under the patents on which he was sued, and at one time claimed to own them, and had dealt extensively in the patented articles, the infringement being clear, held, that he was hardly in position to deny the validity of the patents, and a preliminary injunction granted."

An interesting case in this connection is the case of Blount v. Société Anonyme du Filtre Chamberland Systeme Pasteur, 3 C. C. A.

455, 53 Fed. 98, decided by Jackson and Taft, Circuit Judges. An extract from the opinion in that case will show how closely the facts there were applicable to the facts in this case, and the view entertained by the court in that case:

"But aside from the foregoing considerations, it is shown that appellant was personally active in procuring a license to use this Chamberland patent in the United States; that he was a promoter of and stockholder in the Western Pasteur Filter Company, which accepted a license from the complainant, the Société Anonyme du Filtre Chamberland Systeme Pasteur, as owner of the patent, for the exclusive right to make, use, and sell filters embodying said invention throughout a large portion of the United States; that by and with his consent and active participation the rights so acquired by the Western Pasteur Filter Company were transferred and assigned, for a valuable consideration, to the complainant, the Pasteur-Chamberland Filter Company; that the appellant received a portion of such consideration; that he became a stockholder in and president of said Pasteur-Chamberland Filter Company; that while connected with each of said companies, and personally interested in said patent, he, by circulars and otherwise, lauded and proclaimed the novelty and importance of the invention covered thereby, and was greatly instrumental in bringing to the attention of the public its value and utility, as well as the fact that said companies were the exclusive owners of the valuable right of making, using, and selling the same in the United States. It further appears that the sale and transfer of the rights held by the Western Pasteur Filter Company to the complainant, the Pasteur-Chamberland Filter Company, were duly authorized and directed by the stockholders of the former, including the appellant. Having thus recognized the validity of the patent by acquiring and accepting rights thereunder, by promoting and organizing and holding interests in corporations which held licenses to make, use, and sell the patented article, and by actively participating in selling and transferring such rights, it may well be doubted whether appellant is not estopped from denying or disputing, as against the Pasteur-Chamberland Filter Company, the validity of the patent. It appears that, after parting with his stock in the last-named company, he, in connection with others, commenced making and using the alleged infringing article in the spring and summer of 1892. His prior relation to the patent presented a strong equity in favor of the complainants, if it did not estop him from denying its validity, under the authorities. See Faulks v. Kamp (C. C.) 3 Fed. 898; Onderdonk v. Fanning (C. C.) 4 Fed. 148-150; Purifier Co. v. Guilder (C. C.) 9 Fed. 155; Telegraph Co. v. Himmer (C. C.) 19 Fed. 322; Parker v. McKee (C. C.) 24 Fed. 808; Alabastine Co. v. Payne (C. C.) 27 Fed. 559; Steam Gauge & Lantern Co. v. Ham Mfg. Co. (C. C.) 28 Fed. 618; Burr v. Kimbark, Id. 574."

In the case of Dunham v. Bent, 72 Fed. 60, which was decided by Circuit Judge Colt, in the circuit court for the district of Massachusetts, the question as to whether it was contrary to public policy to contract not to contest the validity of a patent was presented. The syllabus (4) shows what was determined:

"It is not contrary to public policy to allow a party to contract not to contest the validity of a patent."

The case of Philadelphia Creamery Supply Co. v. Davis & Rankin Bldg. & Mfg. Co. (C. C.) 77 Fed. 879, is very much in point here. The syllabus (1) is in the following language:

"A stipulation in a license patent that the licensees will not in any way, directly or indirectly, question the validity of the patent, is not void as against public policy."

This brief statement is very much elaborated in the opinion.

The defendant Finley, having, by his contract with the Rubber Tire Wheel Company, obtained valuable rights under the Grant patent, and having stipulated in that agreement that the patent was valid, and having conveyed his rights, for a valuable consideration, to Munford, is estopped, under all proper rules applicable to the subject, from setting up in this case the invalidity of the patent.

I am satisfied, also, that there was not such a novation of the contract as would relieve Finley from the operation of the estoppel. The Consolidated Rubber Tire Company seems to be, for present purposes, the Rubber Tire Wheel Company; and, if this is not true, no reason appears why the contract with Finley was not assignable by the Rubber Tire Wheel Company.

The next question presented in this case is whether or not the rubber tire which Finley was manufacturing when this bill was filed infringes the Grant patent. Finley claims to have been manufacturing what was called the "Goodyear Wing Tire." This patent (No. 623,703) was granted to Joseph A. Burrows April 25, 1899. This tire, as shown in the figures accompanying the patent, is quite different from the tire which the evidence shows Finley was really manufacturing. The tire he was making, which the complainants claim is an infringement of the Grant patent, has what Judge Wing characterizes as "thin excrescences of rubber." The tire manufactured by Finley has a rim similar in all respects to the rim used by Grant; it has two independent and continuous retaining wires; and it has rubber which is shaped like the rubber used by Grant. This is true as to the rubber actually used. In the Burrows patent it shows straight sides, and the wings extending horizontally,— to be compressed, however, in the rim when used. The tires exhibited to the court are of quite different shape. There is some contention as to whether the wing, so far as it is attached to the tire in actual construction, acts in the same way or performs the same function as the obtuse angle or corner in the Grant tire. I do not think this is very material. I agree thoroughly with Judge Wing in what he says, as follows:

"The infringement of the defendants is clear. While it is urged by the defendants in their answer that they are operating under a patent issued to Burrows, the proof shows that the device shown and described in the Burrows patent is not the one which the defendants are using, but that they have been and are using the exact device shown and described in the complainant's patent, except that on the rubber part of the tire used by the defendants there is a thin excrescence of rubber, which performs no function whatever."

Two experts have testified in this case—one at the instance of each party—upon this question of infringement, as well as upon the question of the patentability of the Grant tire. They differ upon the question of infringement, as upon the other, and give at some length their reasons for the conclusions reached. It would be exceedingly difficult, from their testimony, to come to a conclusion as to the merits of this particular question of infringement. I have before

me, and have examined with care, a considerable number of exhibits of both tires,—the Grant tire and the Goodyear or Finley tire,—and am unable to reach any other conclusion than that the latter, as made and exhibited in evidence, is an infringement of the former. The similarity in all essential respects is plain and manifest.

My conclusion is that the complainants are entitled to an injunction, and, as a result of this conclusion, the cross bill should be dismissed.

After the foregoing opinion was prepared, but before its final revision, and before it was filed, I received notice of the fact that the circuit court of appeals for the Sixth circuit had reversed the decision of Judge Wing in the case of Goodyear Tire & Rubber Co. v. Rubber Tire Wheel Co., 116 Fed. 363, and this decision has been withheld to await a copy of the opinion of the circuit court of appeals in that case. I have received and examined it. The decision of the circuit court was reversed on the ground that the Grant patent was invalid,—in the language of the court, "void for want of patentable novelty." Whether this court should be controlled by this decision of a circuit court of appeals of another circuit, or should exercise and express its independent judgment (Welsbach Light Co. v. Cosmopolitan Incandescent Light Co., 43 C. C. A. 418, 104 Fed. 83; Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856), need not be determined, because, as was said in the opinion prepared before the decision by the circuit court of appeals was rendered, Finley is clearly estopped from setting up the invalidity of the Grant patent in this case.

In addition to the authorities heretofore cited on this point, reference is made to the case of Chambers v. Crichley, 33 Beav. 374, which was a suit by the purchaser of a patent against his assignor to enjoin him from selling a similar article, and the assignor attempted to set up the invalidity of the patent he had sold. The master of the rolls expressed his views upon the question in the following language:

"I do not intend to express my opinion as to the validity of Wright's patent. I will assume, for the purpose of my judgment, that it is worth nothing at all. But this is certain: that the defendant sold and assigned the patent to the plaintiffs as a valid one, and, having done so, he cannot derogate from his own grant. It does not lie in his mouth to say that the patent is not good."

I do not believe that any ground of public policy would require the court to hold this patent invalid, in favor of Finley, under the circumstances of this case.

The infringement being clear, and Finley estopped as indicated, the result in this case must be the same as heretofore expressed. An injunction will be issued on the main case, and the cross bill dismissed.