### ESKIMO PIE CORPORATION v. NATIONAL ICE CREAM CO.

District Court, W. D. Kentucky, at Louisville. July 11, 1927.

1. Patents ⊚⇒301(1)—Preliminary injunction against infringement should not be granted, unless validity of patent is plain and infringement is clear, especially where no claim of defendant's insolvency is made.

It is the general rule that a preliminary injunction against infringement should not be granted, unless validity of the patent has been adjudicated, may be presumed from long acquiescence of the public, or the preliminary showing persuasively points to validity and clearly shows infringement, and the rule is particularly applicable where there is no claim of defendant's insolvency, and no probability of irreparable injury to plaintiff.

2. Patents ⊚⇒297(1)—Defendant's estoppel to question patent's validity supplies lack of adjudication on motion for preliminary injunction.

If defendant is estopped to question validity of the patent, that fact supplies lack of adjudication of validity on motion for preliminary injunction.

3. Patents ⊚⇒218(1)—Royalty payable under license contract may be recovered, not only on patented product, but on its equivalent.

Royalty payable under a license contract is recoverable, not only on the patented product, but on its equivalent as well.

4. Patents ⊚⇒129(3)—Licensee, sued for royalty under contract, cannot deny validity of the patent.

A licensee, sued for royalty under his contract, is estopped to deny validity of the patent.

5. Patents ⊚⇒129(3)—Former licensee held estopped to deny validity of patents as to infringements when contract was in force.

Former license held estopped to deny validity of patent as to infringements when contract was in force, but not as to later ones.

6. Patents ⊚⇒211(1)—Ordinarily patent license contracts are to be construed as other contracts are.

With exception of patentee's right to control by license contract use, manufacture, and sale of patented product, patent license contracts are governed by same general rules, and are to be construed as are other contracts.

7. Patents ⊚⇒211(1)—Court should so construe patent license contract as to carry out parties' intention.

Aim of court should be to so construe patent license contract as to carry out intention of parties, if such construction does not render it invalid.

8. Patents ⊚⇒129(3)—Ordinarily provision in license that licensee shall not contest validity of patent is not binding beyond effective life of contract.

Unless a license contract plainly shows such intention, a provision that licensee will not "contest or deny the validity" of patent is not binding beyond effective life of contract.

9. Patents ⊚⇒129(3)—Former licensee cannot set up fraud in obtaining patent as defense to suit for infringement.

Former licensee under patents cannot set up fraud in obtaining it as defense to suit for infringement.

10. Patents ⊚⇒328—Preliminary injunction against infringement of No. 1,404,539, for eskimo pie, would be denied.

Preliminary injunction against former licensee for infringement of Nelson patent, No. 1,404,539, for eskimo pie, would be denied, where defendant was not estopped to plead invalidity of patent in defense of charge of infringement, though it might not avail itself of plea of fraud in obtaining the patent.

In Equity. Suit by the Eskimo Pie Corporation against the National Ice Cream

Company. On motion for preliminary injunction. Denied.

Humphrey, Crawford & Middleton, of Louisville, Ky., and Henry Bussey Floyd, of Chicago, Ill., for plaintiff.

Eugene R. Attkisson, of Louisville, Ky., and Joseph Dugan, of Washington, D. C., for defendant.

DAWSON, District Judge. This is a suit in equity for the alleged infringement by the defendant of patent 1,404,539, issued to Christian K. Nelson, the alleged inventor, and to one Stover, assignee of a one-half interest therein, which patent by proper assignment is now owned by the plaintiff, Eskimo Pie Corporation. The case is before me on the motion of the plaintiff for a preliminary injunction.

[1] The general rule governing the granting of preliminary injunctions in patent infringement cases is that the injunction should not be granted, except where the validity of the patent has been adjudicated, or where its validity may fairly be presumed by reason of long acquiescence on the part of the public, or where the preliminary showing persuasively points to its validity, and unless the proof on the preliminary showing tends to clearly show infringement. National Cash Register Co. v. Remington Arms Co., 286 F. 367 (3d Cir.); Milwaukee Printing Co. v. Stover, 290 F. 387 (7th Cir.); Continental Wire Fence Co. v. Pendergast (C. C.) 126 F. 381.

[2] This rule is especially applicable where, as in this case, there is no claim nor showing of insolvency on the part of the defendant nor probability of irreparable injury resulting to the plaintiff. It is now generally accepted by the courts that, if the defendant is estopped to question the validity of the patent, that fact supplies the lack of adjudication or acquiescence. Time Telegraph Co. v. Himmer (C. C.) 19 F. 322; Daniel v. Miller (C. C.) 81 F. 1000; Mellor v. Carroll (C. C.) 141 F. 992; Northern Insulating Co. v. Union Fibre Co. (D. C.) 199 F. 793; Continental Wire Fence Co. v. Pendergast (C. C.) 126 F. 381.

The evidence presented to the court on this motion clearly establishes infringement, if the patent is valid. With the exception, however, of an agreed judgment in the District Court of New Jersey, to which this defendant was not a party, there has been no adjudication, so far as the court is advised, of the validity of Nelson patent, 1,404,539; nor does the proof show any such public acquiescence in the claim of Nelson as the inventor as to presumptively establish validity. The plaintiff contends, however, that the defendant is estopped to deny the validity of the patent in this proceeding, and that this fact, in connection with the convincing evidence of infringement, entitles it to a preliminary injunction. The plea of estoppel is based upon certain stipulations contained in a license granted by the Russell Stover Company, the former owner of the patent in question and plaintiff's predecessor in title, to the defendant, National Ice Cream Company, of Louisville, Ky., dated the 30th day of January, 1922, by the terms of which the defendant was authorized and licensed to manufacture, sell, and distribute, in designated territory, under the name of "eskimo pie," the product described in the patent in question, during the life thereof.

Paragraph 7 of this license contract reads as follows:

"It is understood and agreed that licensee shall not have the right to use said trademark, trade-name, designs, or prints upon any other goods than those which are the subject-matter of this contract, and that said licensee further agrees that he will not test, contest, or deny the validity of the patent above identified or in any way assist others in so doing. As a further consideration for the granting of this license, licensee agrees that he will not at any time during the period of this contract sell or offer to sell any product manufactured under the process described in the above identified application or any product similar thereto under any trade name except such as is designated by owner."

The record discloses that, after operating under this license for a short time, the defendant ceased to make any of the product covered by the patent, or to exercise any of its rights or fulfill any of its obligations as licensee, and, after repeated efforts on the part of the licensor to get the defendant to resume operations under the license, the defendant, on the 13th day of June, 1923, by letter of that date, notified the plaintiff that it did not intend to resume operations under the license, and demanded the return of certain alleged unearned royalties which it had paid in advance as such licensee.

Matters were allowed to remain in this condition, without any action on the part of the plaintiff other than sporadic attempts to induce the defendant to resume operation under the license, until September 17, 1925, when it wrote a letter to the defendant, canceling the license because of failure on the part of the defendant for two years to manufacture, sell, or distribute any of the product it

was authorized so to do under its license. The defendant acquiesced in this cancellation, and in the month of December, 1926, it commenced to manufacture and sell a confection under the trade-name of "pik-nic," which was practically identical with "eskimo pie," formerly made and sold by it under its license. The plaintiff regarded this conduct as infringement, and promptly so notified the defendant and demanded its cessation. On December 22, 1926, the defendant, through its counsel, denied infringement, intimated that the Nelson patent was invalid, and declined to cease the acts of alleged infringement.

In considering the question of whether the defendant is estopped in this action to deny the validity of the Nelson patent, it might be helpful to have clearly in mind certain settled principles touching the rights of the parties under patent license contracts. Where a patent license contract by its terms runs for a definite period, or for the life of the patent, as in this case, one party to the contract, without fault of the other, cannot terminate it. If he attempts so to do, the other party may disregard this attempt and treat the license as still in force. Thus, in this case, the defendant on its own motion could not have annulled the contract, as it attempted to do by its letter of June 13, 1923. Had the plaintiff so desired, it could have disregarded this attempt and treated the contract as still in force.

[3] If it had so elected, then, when the defendant commenced to manufacture "pik-nic" bars, the plaintiff could have recovered the same royalties on these as the contract stipulated were to be paid on "eskimo pie," as it is the law that the royalty fixed by the license may be recovered, not only on the licensed product, but on its equivalents as well. St. Paul Plow Works v. Starling, 140 U. S. 184, 11 S. Ct. 803, 35 L. Ed. 404; Barber Asphalt Paving Co. v. Headley Good Roads Co. (D. C.) 283 F. 236.

[4] In such an action on the license contract, defendant, upon well-settled principles not peculiar to patent law, would have been estopped to question the validity of the patent. This would be true, even though the license contract contained no express recognition of the patent's validity or agreement not to question its validity. Tate v. Baltimore & Ohio Railroad Co. (C. C. A.) 229 F. 141; Miami Cycle Co. v. Robinson (C. C. A.) 245 F. 556; Kohn v. Eimer (C. C. A.) 265 F. 900; Dunham v. Bent (C. C.) 72 F. 60; Eureka Co. v. Bailey Co., 11 Wall. (78 U. S.) 488, 20 L. Ed. 209; Magic Ruffle Co. v. Elm City Co., Fed. Cas. No. 8,949; Finley

Rubber Tire Co. v. Consolidated Rubber Tire Co. (C. C.) 116 F. 629; Philadelphia Creamery Co. v. Davis & Rankin Building & Mfg. Co. (C. C.) 77 F. 879; Reece Folding Machine Co. v. Earl & Wilson (D. C.) 205 F. 536; Indiana Mfg. Co. v. J. I. Case Mfg. Co. (C. C. A.) 154 F. 365; United States v. Harvey Steel Co., 196 U. S. 310, 25 S. Ct. 240, 49 L. Ed. 492; Martin v. New Trinidad Lake Asphalt Co. (D. C.) 255 F. 93; Moore v. National Water-Tube Boiler Co. (C. C.) 84 F. 346; Chicago & Alton Ry. Co. v. Pressed Steel Car Co. (C. C. A.) 243 F. 883; United Machinery Co. v. Caunt (C. C.) 134 F. 239; Barber Asphalt Paving Co. v. Headley Good Roads Co. (D. C.) 284 F. 177; Holmes, Booth & Haydens v. McGill (C. C. A.) 108 F. 238; Victory Bottle Capping Machine Co. v. O. & J. Machine Co. (C. C. A.) 280 F. 753; Burr v. Duryee, Fed. Cas. No. 2,190.

On the other hand, plaintiff had the right to acquiesce in the repudiation and to cancel the contract, treating the defendant thereafter as an infringer. This it did, not only by its letter of September 17, 1925, but by express declaration in the bill, but in my opinion the license contract continued in force until September 17, 1925, the date of the cancellation.

[5] Under this state of case, the plaintiff is entitled to an accounting, to determine what royalty, if any, had accrued under its license up to the date of its cancellation, and to recover such amount, and as to this claim the defendant is estopped to plead the invalidity of the patent. From the date of the cancellation of the license contract the defendant is to be treated as any other infringer, subject to the same liabilities and entitled to the same defenses as any other infringer, unless it be held that the agreement in the license not to contest the validity of the patent continues in force after the contract has by the conduct of the parties been terminated.

[6, 7] With the exception of the right of a patentee to control, by license contract, the use, manufacture, and sale of the patented product to an extent which would be illegal in other contracts, patent license contracts are governed by the same general rules and are to be construed as are other contracts. The aim of the court should be to so construe the contract as to carry out the intention of the parties, if such construction does not render it invalid.

In the case of Pope Mfg. Co. v. Gormully, 144 U. S. 224, 12 S. Ct. 632, 36 L. Ed. 414, the Supreme Court, while it did not find it necessary to pass upon the question, strongly indicated its disapproval of a provision in

a license contract which bound the licensee never to dispute the validity of the licensed patent. The validity of such agreements has never been passed upon by the Supreme Court, but the inferior federal courts have generally recognized such agreements as binding, and when we bear in mind that the patentee is not required to permit the use of his patent, but may withhold its use from the public for the entire life thereof, I can conceive of no good reason, if he does grant the use of it to another, why he may not incorporate as one of the conditions that the licensee shall not thereafter, during the life of the patent, question its validity. If such was the intention of the parties in this case when they inserted the provision by which the licensee agreed not to test, contest or deny the validity of the patent, nor in any way to assist others in so doing, I think it should be enforced as written; otherwise, a patentee would be denied the full enjoyment of the right given to him by the patent to exclude others from its use during the life thereof.

[8] However, as pointed out in the case of Pope Mfg. Co. v. Gormully, supra, it is as important to the public that competition should not be repressed by worthless patents as it is that the patentee of a really valuable invention should be fully protected in his monopoly. Guided by this rule, I do not think a court of equity should construe an agreement on the part of a licensee not to contest the validity of the patent covered by the license to be binding beyond the effective life of the contract, unless it plainly appears from the instrument that such was the intention of the parties.

I am aware that some of the federal courts have construed provisions in license contracts such as the one under consideration here as binding upon the licensee, even after the expiration of the license, and regardless of whether the suit in which the question arose was one on the contract or one for infringement. The cases usually relied upon to sustain the contention made by the plaintiff in this case are Dunham v. Bent (C. C.) 72 F. 60, Philadelphia Creamery Co. v. Davis & Rankin Building & Mfg. Co. (C. C.) 77 F. 879, and Finley Rubber Tire Co. v. Consolidated Rubber Tire Co. (C. C.) 116 F. 629.

An examination of the case of Dunham v. Bent, supra, leads me to conclude that it does not go to the extent claimed by the plaintiff. In that case a license had been granted to the defendant, covering certain patented machines; the licensee agreeing that he would not in any way contest the validity of any of the patents he was licensed to use, nor the title of his licensor thereto. Thereafter, and *while the license was still in effect,* the licensee engaged in the use of machines not covered by the license, but claimed by the licensor to be infringements of his machine. The suit was for the alleged infringement. The court simply held, and I think properly, that the defendant could not defend this infringement suit by pleading the invalidity of the patent covered by his license. To have permitted such a plea while his license was still in effect would undoubtedly have been a breach of his covenant. I think, however, a different situation would have been presented, and a different conclusion required, had defendant's license expired, or by act of the parties been canceled, prior to the infringement action.

Philadelphia Creamery Co. v. Davis & Rankin Building & Mfg. Co., supra, fully sustains plaintiff's contention. The court in that case treated the stipulation not to contest the validity of the patent as binding throughout the life of the patent, although the license ran for only one year, with the privilege of renewal for another year. The court seems to have assumed this construction of the contract without question. The opinion is devoted to a discussion of the validity of such an agreement; the court reaching the conclusion that such a contract was not against public policy. I am not disposed to question the court's conclusion on the law, if its interpretation of the meaning of the contract was correct; but, if the license contract contained substantially the same agreement not to contest the validity of the patent as is contained in the contract in this case, I am not prepared to accept the court's construction of the contract itself. In that case the court said that the license agreement contained, among other things, "the provision that the defendants would not *thereafter* in any way, directly or indirectly, question the validity of the Houston-Thomson patent." The word "thereafter" does not appear in the agreement in the case at bar, and that fact might suggest a distinction between the Philadelphia Creamery Company Case and this case, although apparently the court did not regard that word as controlling in determining the meaning of the agreement.

I do not think the case of Finley Rubber Tire Co. v. Consolidated Rubber Tire Co., supra, is in point. In that case one who had obtained an exclusive license to the use of a patent, to run during its life, by a license contract in which he acknowledged its validity, sold this license to another for a valuable consideration. Thereafter the purchaser

sued the original licensee as an infringer, and the court held that the original licensee was estopped in such a suit to plead the invalidity of the patent, the right to the use of which he had sold to another. It is apparent that the question in that case was entirely different from the one here presented.

These three cases have been cited with approval in a number of other federal court decisions, but, so far as I have investigated these cases, they were either suits on license contracts *still in force,* or for royalty which had accrued under contracts before their termination, or they were suits in which the patent's validity was not attacked, the language of the court on the subject of estoppel being dictum. The case of Eskimo Pie Corporation v. Arctic Fruit Ices, Incorporated (D. C.) 15 F.(2d) 853, copied into plaintiff's brief, falls within each of these classes, as the opinion not only states that the license contract was still in force, but also states that the validity of the patent was not questioned.

After a most careful study of all the cases I have been able to find on the subject, I am satisfied that the opinions of the federal courts have not been so numerous and uniform on this subject as that it may be said that the law has assigned to the language employed to express the agreement of the defendant not to contest the validity of the patent such a fixed and definite meaning as to relieve the court of the duty of determining for itself the effect of this language, as used in this particular contract. I am unable to find in the contract as a whole, or in the particular language used, anything which would justify me in holding that it was the intention of the parties that the particular clause under consideration should continue in effect after the rest of the contract had been abrogated. The most natural construction is that this clause lost its efficacy when the rest of the contract ceased to be binding.

But for the suggestion contained in the opinions relied upon by the plaintiff, I doubt very much if any attorney, reading this contract, would be impressed with the belief that it was the intention of the parties to continue this clause in force after the rest of the contract ceased to be effective. It seems to me that, if such had been the intention of the parties, the most natural thing for them to have done would have been to incorporate in the contract, in connection with the clause, language unmistakably expressing that purpose. This was exactly what was done in the license contract involved in the case of United Shoe Machinery Co. v. Caunt (C. C.) 134 F. 239.

To express such intention in that contract, the parties used this language:

"The lessee also agrees that he will not directly or indirectly infringe or contest the validity of or the title of the lessor to any of the patents referred to in the 'schedule of patents' hereto annexed. The termination or cesser of this lease and license from any cause whatever shall not in any way affect the provisions of this clause or release or discharge the lessee from the admission and estoppel herein set forth."

It might be suggested, as indeed it was, in Dunham v. Bent, supra, that inasmuch as no specific agreement not to contest the validity of a patent is necessary, in order to estop a licensee from raising that question when sued on the license contract, or for royalty which accrued during the life of the license contract, the agreement not to contest the validity of the patent would be meaningless, unless it be construed as binding upon the defendant after the termination of the license. I am not impressed, however, with this suggestion, because we all know that even the best of lawyers are constantly inserting conditions in contracts which neither add to nor take from the rights of the parties, had the contract been written without such conditions therein.

A most striking example of this fact is the license contract under consideration here. Clause 1 declares that the license shall continue for the full term of the patent, unless sooner terminated under the terms of the contract. This was entirely unnecessary, and added nothing to the contract, because it is well settled that, in the absence of a provision fixing a shorter period, a license contract runs for the life of the patent. St. Paul Plow Works v. Starling, 140 U. S. 184, 11 S. Ct. 803, 35 L. Ed. 404.

Again, in clause 8 of the contract, after providing that the licensor may cancel and forfeit the contract for certain reasons therein stated, it is specifically recited that, notwithstanding said cancellation, the licensee will not be excused from the payment of royalties which accrued prior to the date of the forfeiture. This latter provision added nothing of force to the contract, because it is well settled that, upon cancellation of the license, the licensee is still liable for the royalties which accrued during the time he was operating under the license.

Again, in clause 7 it is stipulated that the licensee shall not have the right to use the licensed trade-mark, trade-name, etc., upon any other goods than those which are the subject-matter of the contract. Of course, this

provision was not necessary, and placed no restriction on the licensee which would not have existed, had it been omitted.

These three provisions were doubtless inserted in the contract to emphasize what was already its meaning, and I am persuaded the same thing is true as to the agreement not to test the validity of the patent. I do not think it placed, or was intended to place, any other restriction upon the defendant than he would have been under, had the language been omitted.

[9, 10] For the reasons stated, I am of the opinion that the defendant is not estopped to plead the invalidity of the patent in defense of the charge of infringement; but I do not think it can avail itself of the plea of fraud in obtaining the patent, set out in paragraph 15 of its answer. See Eureka Co. v. Bailey Co., 11 Wall. (78 U. S.) 488, 20 L. Ed. 209; Marsh v. Nichols, Shepard & Co., 128 U. S. 605, 9 S. Ct. 168, 32 L. Ed. 538.

An order will therefore be entered, overruling the motion for a temporary injunction herein.