## DREYFUS *v.* SEARLE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CALIFORNIA.

Argued December 20, 21, 1887.— Decided January 9, 1888.

The claim of letters-patent No. 48,728, granted to John Searle, July 11, 1865, for an "improved process of imparting age to wines," namely, "The introducing the heat by steam, or otherwise, to the wine itself, by means of metallic pipes or chambers passing through the casks or vessel, substantially as set forth," is not valid for a process, because no different effect on the wine is produced from that resulting from the old method of applying heat to the wine, and is not valid for the apparatus, because that had before been used in the same way for heating a liquid.

BILL IN EQUITY to restrain infringement of letters-patent. Decree for complainant. Respondent appealed. The case is stated in the opinion of the court.

*Mr. J. Hubley Ashton* for appellant.

*Mr. A. C. Bradley* for appellee. *Mr. W. J. Newton* was with him on the brief.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity, brought in the Circuit Court of the United States for the District of California, by Sophia Searle,

as executrix of the last will and testament of John Searle, deceased, against Benjamin Dreyfus, Emanuel Goldstein, Jacob Frowenfeld, and John J. Weglein, copartners under the firm name of B. Dreyfus & Co., for the infringement of letters-patent of the United States, No. 48,728, granted to John Searle, July 11, 1865, for seventeen years from June 15, 1865, for an "improved process of imparting age to wines." The bill was filed December 21, 1881.

The specification and claim of the patent are in these words :

"Be it known that I, John Searle, of the city and county of San Francisco, State of California, have invented a new and improved process for imparting ' age to wines and liquors;' and I do hereby declare that the within is a full and exact description of the same.

" The nature of my invention consists in providing a process for shortening the time that is now required for ripening wines and liquors to about one-half the period, without deteriorating their flavor, by the use of steam.

" Madeira, sherry, port, teneriffe, and other wines have been prepared for many years, for imparting age, through the medium of ' estufas,' or large ovens, having flues by which they are heated. These ' estufas ' are filled with wines and spirits in casks or pipes, and are kept at a proper heat until the contents of the casks show the desired age through the staves. By this process the heat must necessarily be very great (say 140°), which impairs the flavor of the wine, by imparting to it the taste of the cask, and oftentimes the casks have to be taken out and recoopered before the process can be completed.

" By the use of my process the following advantages are derived :

" 1st. There is a great saving of time and fuel, the building and air not being heated within as by the old process.

" 2d. It can be effected in casks of the largest size, thereby insuring uniformity of quality in the wine.

" 3d. The process can be carried on in any storehouse or cellar.

"4th.  There is no injury to the casks, whereas by the old system they become damaged and require constant repairs.

" 5th.  The breakage and loss on the liquors is very much reduced, which is sometimes excessive in the 'estufas,' by the falling to pieces of the heated and dried-up casks.

" 6th.  No bad taste is imparted to the liquors during my process, which is too often the case in the ' estufas,' where the wine receives the heat through the sides of the cask.

" To enable others skilled in the art to make use of my improvement, I will proceed to describe my process and its operation.  I use casks or tanks (as the case may be) for holding the wine; if casks, they may be placed on end.  Through each of these casks or tanks, near the base, I pass an iron or metallic pipe, (copper is preferable,) of about one inch, and open at its end.  These pipes connect with a main steam-pipe, and can be closed and the steam shut off, should the heat become too great for the wine, by means of a stop-cock attached to each of the pipes.

 " The degree of heat which I use in the operation varies from 100 to 140°.

" The time required to perfect the operation of ripening wine by this process is about six weeks, yet, of course, it will be left to the knowledge and discretion of the keeper of the cellar to determine when the ripening process is completed.

" Having thus described my invention, what I claim and desire to secure by letters-patent is, the introducing the heat by steam, or otherwise, to the wine itself, by means of metallic pipes or chambers passing through the casks or vessel, substantially as set forth."

The answer of the defendants denied that the invention was new or useful, and alleged that it was in public use in San Francisco for more than two years prior to the date of the application by Searle for the patent, by two persons, named Wieland and Voorman.

Issue being joined, proofs were taken on both sides, and, on the 22d of May, 1883, the Circuit Court entered an interlocutory decree, adjudging the patent to be valid, that the defendants had infringed upon it by treating and ageing wine by the

process described and claimed in it, and ordering a reference to a master to take and report an account of profits from the infringement. He reported the amount of profits to have been $3249.60. Both parties excepted to the report, but all the exceptions were overruled, and a final decree was entered in August, 1884, awarding a recovery to the plaintiff of $3249.60, with interest from the date of the entry of the interlocutory decree, May 22, 1883, and costs. From this decree the defendants have appealed to this court.

It is stated in the specification of the patent, that age had been imparted to wines, for many years, by placing them in casks, in estufas, or large ovens, and keeping up a proper heat therein, on the outside of the casks, until the contents of the casks showed the desired age. The application of artificial heat to impart age to wines was, therefore, old. The heat was applied to the wine from the outside. The new process claimed in the patent is to introduce the heat by causing steam, or other heating medium, to pass through metallic pipes or chambers placed on the inside of the cask, and within the body of the wine in the cask. This is called in the patent a new process; but, so far as the action or effect of heat on the wine is concerned, in respect to ripening it or imparting to it what is called "age," or any other quality imparted to it by heat, the effect or result is the same as that produced by imparting the heat to the wine from the heated air, in the old-fashioned estufa or oven. It is shown by the evidence that the application of the heat to the wine from the inside of the cask has no different effect upon it from that of the heat as applied by the old process, and that no chemical or other change is produced in the wine different from that produced by the old process.

There was no novelty in the process as a patentable process. Whatever novelty there could have been must have consisted wholly in the apparatus used for introducing the heat to the inside of the body of the wine. But it appears by the evidence that the apparatus, as a means of imparting heat from it to the body of the liquid inside of which it was placed, was not new. Wieland testifies that for twenty-five years prior to

November,.1882, he had, in conducting his business as a brewer in San Francisco, heated water by means of a copper coil filled with exhaust steam, placed in the water, the water being in a closed tub containing fifty or sixty barrels, the copper pipe entering the tub on the side, near the bottom, and forming a coil inside, and then passing out through the top. It also appears that a like apparatus was used in the United States, prior to the issuing of the plaintiff's patent, for the purpose of heating high wines by means of steam in a copper coil, so as to evolve the alcoholic vapors. There was no patentable invention in applying to the heating of wine or any other liquor, from the inside of the cask, the apparatus which had been previously used to heat another liquid in the same manner.

The case falls directly within the decisions of this court in *Pomace Holder Co.* v. *Ferguson*, 119 U. S. 335, 338, and the cases there collected, and in *Thatcher Heating Co.* v. *Burtis*, 121 U. S. 286.

There having been, therefore, nothing new as a process in the operation or effect of the heat on the wine, and nothing patentable in the application of the old apparatus to the heating of the wine,

*The decree of the Circuit Court must be reversed, and the case must be remanded to the Circuit Court for the Northern District of California, with a direction to dismiss the bill.*