## STOWE v. AMERICAN REFRACTORIES CO.

(Circuit Court of Appeals, Sixth Circuit. July 22, 1921.)

No. 3499.

1. **Patents ⊚⇒328—792,822, for process of making refractory compound for furnace linings, not infringed.**

   Davison's patent, No. 792,822, for a process or method of making a refractory compound for furnace linings or similar purposes, *held* not infringed.

2. **Patents ⊚⇒175—Using rotary kiln, instead of stationary kiln, held not to be invention.**

   A process or method of making a refractory compound for furnace linings, which used a dry mix and rotary kiln, *held* not to be construed as including such method of mixing, as, in view of state of art, it would not be invention to substitute such method for wet mix and stationary kiln.

Appeal from the District Court of the United States for the Eastern Division of the Southern District of Ohio; John E. Sater, Judge.

Suit by Charles B. Stowe against the American Refractories Company for infringement of patent. From a decree dismissing the bill, plaintiff appeals. Decree affirmed.

Edward R. Alexander, of Cleveland, Ohio, for appellant.

Frederick W. Winter, of Pittsburgh, Pa. (Winter & Brown, of Pittsburgh, Pa., on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. Infringement suit brought by Stowe, owner of patent No. 792,822, issued June 20, 1905, to Davison, upon application filed April 18, 1904, for a process or method of making a refractory compound for furnace linings or similar purposes. The claims sued upon are Nos. 3 and 4, which read as follows:

3. The process of making a refractory magnesite compound which consists in comminuting natural magnesite, silica and oxide of iron, mixing the ingredients in a dry state, burning the mixture to clinker and comminuting the clinker.

4. The process of making a refractory magnesite compound which consists in comminuting natural magnesite, silica and oxide of iron, mixing the ingredients in a dry state, burning the mixture to clinker in a rotary kiln and comminuting the clinker.

There were the usual defenses of invalidity and noninfringement. The court below dismissed the bill for lack of infringement.

As early as 1896 it had developed that the most suitable known material for making refractory furnace linings needed in certain steel processes was a magnesite ore found in Austria. This was pulverized, heated to a high temperature, which caused it partially to fuse together in clinker form, and was then ground into a fine granular condition. It might be sold in this shape to the user, to be by him spread upon the floor of the furnace and fused into an unbroken lining, or it might be made up into bricks and used in that form.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

It was known that this ore contained, in somewhat variable proportions, magnesia, iron, and silica; and it was commonly, if not universally, supposed that the iron was necessary as a flux for the magnesia, and that the silica was an undesirable element. It was Davison's substantial discovery, as the patent owner now contends, that the silica played a useful part in the combination, in that it considerably reduced the temperature necessary to frit or begin to fuse the material, as compared with a combination from which the silica was absent; and it may be conceded, for the purpose of this discussion, that this discovery, calling for a purposeful, instead of an incidental, presence of silica, would lend patentability to a claim for putting together by known processes the known ingredients of the natural material, if the necessary novelty existed.

Several manufacturers, including the Harbison-Walker Company, had been engaged in making this class of material since long before the date of Davison's invention. Some 10 years after the patent issued, the Harbison-Walker Company altered its process, and the defendant began to use the process of Harbison-Walker embodying this change. Upon this change the charge of infringement rests. We think the simplest way to meet the controlling issues is to consider this change. If it did not involve an inventive step, so that defendant's present process is not patentably distinguishable from that which was used before Davison's invention, it is obvious that Davison can have no patent which can be construed broadly enough to support the charge of infringement and can at the same time escape the defense of invalidity.

As early as 1898 the Harbison-Walker Company, which had been buying and using the Austrian magnesite for this purpose, found difficulty in obtaining this material. The company thereupon proceeded to import and use a Grecian magnesite ore, which was similar to the Austrian save for a deficiency in iron. The company supplied this deficiency by adding iron ore, and then thoroughly pulverized the mixture, moistened it sufficiently to make a thick paste, made this up into small blocks or "dobies," and burned these "dobies" in kilns of the types in common use for burning bricks. By this process the carbonic acid gas was driven off and the material "dead-burned." It was then in fritted or clinker form, and was thereafter ground and used as above described. If the Davison patent extends—as we assume it does—to the mixture of magnesite and silica, by using the raw material which naturally contains both, it is clear that it discloses nothing not previously in use by Harbison-Walker, except that Davison mixed his materials dry and, as specified in claim 4, burned them in a rotary kiln.

Thus we come to the question, as decisive, whether in 1904 it would have been invention to substitute in the Harbison-Walker process a dry mix and a rotary kiln for a wet mix and a stationary kiln. The person skilled in the art to whom this problem was presented would have before him his pulverized magnesite ore, containing silica and needing iron, and also his pulverized iron ore. He would know that these materials should be mixed as intimately and perfectly as possible and then burned to the fritting or clinker stage. He would know that the rotary kiln was an instrumentality in common used for simultaneous mixing

and burning of material which was to be fused into a clinker form. It was then specially familiar in making Portland cement, in which the more important materials to be thus fused were limestone and aluminum. While the finished magnesite refractory and the finished cement are distinctly different products, it is not easy to point out any substantial distinction in the mixing, burning, and fritting steps of the process of making the one or the other.

The art of making one kind of synthetic rock (Portland cement concrete) and the art of making another kind of synthetic rock (magnesite refractory) are not so totally dissimilar as are dyeing cloth and tanning leather (Tannage Co. v. Zahn [3 C. C. A.] 70 Fed. 1003, 17 C. C. A. 552), or polishing wood and pulverizing clay (Potts v. Creager, 155 U. S. 606, 15 Sup. Ct. 194, 39 L. Ed. 275). They are as similar as heating water to get a useful heat medium and heating wines to age them (Dreyfus v. Searle, 124 U. S. 60, 8 Sup. Ct. 390, 31 L. Ed. 352), or lifting paper sheets and lifting pills (Stearns v. Russell [6 C. C. A.] 85 Fed. 226, 29 C. C. A. 121). Concrete, plaster of paris, fire brick, the mortars in which they are set, and furnace linings are all fire-resisting materials in different degrees. Concrete is used for a protective lining, as in paper pulp digesters. Munising Co. v. American Co. (C. C. A. 6) 228 Fed. 700. 143 C. C. A. 222.

The substitution of the rotary kiln for the other method of burning impresses us as being only the step which would have occurred to any one fairly familiar with this kind of work; yet we might hesitate to act upon this impression, were it not fortified by other things appearing in the record; and these other things are important, not so much as direct anticipations, but as evidence confirmatory of the obvious character of the substitution. The patents to Reid of 1874 and to Ransome of 1886 describe rotary kilns for burning pulverized gypsum, or lime, cement, etc., and specify the advantages of that device for accomplishing exactly what Davison wished to accomplish. The Ransome patent especially points out that for this purpose the operator may take his choice between putting the material in blocks and burning in a stationary kiln, or pulverizing it and feeding it into a rotary kiln, and also points out that the ingredients, such as clay and chalk, may be mixed either wet or dry, and evidently contemplates that the stationary and rotary kilns and the wet and dry mixes are known equivalents—not only with reference to clay and chalk, but also as to cements "made with other materials than clay and chalk."

The De Navarro patent of 1896 not only describes the distinct advantages of the rotary kiln for making Portland cement, but points out that it contains the same ingredients which constitute the magnesite refractory, viz. silica, alumina, iron, and magnesia. Though, of course, the proportions are very different, the process of mixing and burning is precisely that contemplated by Davison when he calls for a rotary kiln. Indeed, it should be noted that Davison's specification does not describe any new method of kiln treatment, but merely says:

"I then pass the mixture through an ordinary rotary cement kiln, * * * in a well-understood manner."

The Krottnaurer patent of 1900 and the Lossing patent of 1901 further describe the operation of rotary kilns to accomplish effective mixing and burning, not only of cement, but, in the latter patent, of earths and chemicals. If it should be thought that there are such distinctions between burning magnesite and burning cement that the cement kiln would not be familiar to the magnesite worker—though this is in the face of Davison's references to the rotary cement kiln as a thing well known to the artisans whom he was addressing—we find in the British patent to Kirkpatrick of 1902, where Kirkpatrick was discussing the manufacture of magnesite compositions for use in furnaces, a statement that he uses a rotary or any other suitable furnace or kiln.

The use of a rotary kiln in this very situation was not new in 1904. In May, 1899, the Harbison-Walker Company burned several tons of Grecian magnesite mixed with iron ore in a rotary kiln. Although the product was sold, this was an experimental use; but the company soon thereafter installed a rotary kiln for this express purpose. It was used to some extent, although not largely, in such manner that if the use had persisted it would plainly have been a complete anticipation. It was installed to use with natural gas and this proved to be an unsatisfactory method of heating. Within a short time after this experiment was discontinued, the Harbison-Walker Company obtained the exclusive importation rights to the Austrian magnesite, and thereafter had no use for any synthetic process until importations of the Austrian product were cut off by the war in 1914. It then returned to and continued to use the rotary kiln.

Further confirmation of the obviousness of the substitution is found in the Collom patent application of June, 1899. Collom was an employee of the Harbison-Walker Company, and had conceived the idea that dolomite, an inexpensive native material, could be used in place of the imported magnesite to make the desired refractory composition. His application for a patent describes the dry mixture and the rotary kiln and the complete process of Davison more fully than Davison does—save for the substitution of the dolomite, which he thinks an equivalent of magnesite. This application was abandoned, and hence it is important only as indicating that the use of the rotary kiln was an expedient to which every one naturally turned. See Baker v. Hughes Co. (C. C. A. 2) 270 Fed. 97, 99.

Such counter force as might otherwise be found in the abandonment is not here present, because Collom sought no patent upon the use of the rotary kiln, and therefore did not abandon any such claim. He seems to take for granted that its use in this connection would be nonpatentable. It is often true that an abandoned attempt to use some device is evidence of the fact that one who later succeeds in using it has made an invention, but it is evidence only; and these instances of failure to use the rotary kiln to any considerable extent have little, if any, force as indicating that its use was not obvious when its known results were desired.

[1, 2] Putting these considerations with the fact that the use of the rotary kiln for burning magnesite was established in Europe, and that such European usage was known in this country, and with the testimony

of experts as to the common knowledge of the rotary kiln and what it would do, we are driven to the conclusion that it would not have been invention in 1904 to substitute this process of burning for the kiln burning which Harbison-Walker was using, in its then current method of manufacturing magnesite refractory materials. It follows that the patent cannot receive a construction broad enough to cover a continuation of the old Harbison-Walker method with only this change.

We may add that a reading of Davison's specification convinces us that he thought that his invention was in the addition, during manufacture, of silica and iron to natural magnesite—or at the most, in the addition of one of these elements to natural material containing the other two. The theory that he had discovered a new method of mixing and burning materials that others were then mixing and burning would have surprised him.

Our conclusion directly affects claim 4. Claim 3 can be distinguished from the old Harbison-Walker process only by limiting the mixing and burning to a method substantially like that of the rotary, and then it is governed by the same considerations as claim 4.

The decree is affirmed.

---

⊚⊐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes