**GOOD HUMOR CORPORATION OF AMER-
ICA v. BLUEBIRD ICE CREAM &
CHARLOTTE RUSSE, Inc.**

No. 6414.

District Court, E. D. New York.

Nov. 29, 1932.

Phillips, Mahoney, Libell & Fielding, of New York City (Samuel E. Darby, Jr., of New York City, of counsel), for plaintiff.

Celler & Kraushaar, of New York City (W. Lee Helms, of New York City, of counsel), for defendant.

GALSTON, District Judge.

This is a patent suit in which infringement is alleged of letters patent No. 1,470,-524 granted October 9, 1923, and No. 1,718,-997 granted July 2, 1929, to Harry B. Burt. The former patent is for a process of making frozen confections, and claims 1, 2, and 5 are in issue; the second patent is for a frozen confection, and claims 1, 5, and 7 thereof are in issue.

**The Process Patent.**

Reference to the specification discloses that the invention relates to the manufacture of confections which have a frozen body portion formed of an edible substance which is soft or fluid at normal temperatures and is hardened by refrigeration. Such confections are ice cream, sherbet, or the like.

It is said that in the manufacture of such confections from a hygienic or sanitary viewpoint, as indeed must be so with all foods, it is important that the confection be handled with the hands or fingers as little as possible. To this end a handle member, as, for example, a stick, is attached to the frozen body portion and utilized in subsequent operations.

In carrying out the invention, the confection, "while still in a soft or fluid condition, being preferably partially frozen," is placed in a suitable container. Then suitable handles, such as sticks, are positioned in the "partially frozen substance or ice cream and held in this position while the freezing process is continued and the ice cream or other substance hardened in the well known manner."

After the handles have been thus positioned, the container is then placed in a refrigerating chamber and subjected to a continuation of the freezing operation. After the substance has been hardened the container is removed from the resulting frozen and hardened block.

The frozen composite block is cut up either manually or mechanically into small individual sections, each of which having thus been provided with one of the handles.

The individual sections may then be coated with a protective covering of an edible substance, for example, chocolate. After the protective covering is applied to the body portion, the individual confection is supported on a drying frame or rack.

Claim 1 of the patent reads as follows: "1. The process of making a frozen confection which consists in bringing a handle member in contact with a body of edible substance, which is fluid at normal temperatures and subjecting the body to refrigeration whereby it is solidified and thereby attached to the handle by congelation."

The defendant's process consists in filling a brick mould with soft ice cream and freezing this mixture for twenty-four hours in the so-called "hardening room." The solid brick is then cut into a plurality of blocks and the cutting machine forms holes in each block. Operators then place sticks in the holes, and other operators take the sticks and attached blocks and dip the blocks into chocolate. These blocks are then placed in bags; the bags are put into a metal container, and are

then placed in the hardening room to prevent the melting of the cream.

It is therefore apparent that in the defendant's operation the sticks are not applied to the body of the confection and the substance subjected to a freezing operation until after the ice cream has been solidified. There is no question that the defendant's operations, as testified to by the witness Lippin, develop ice cream frozen hard before the sticks or handles are inserted in the blocks. The temperature of defendant's hardening room is from zero to 5 or 8 degrees above, and the ice cream mixture, before the blocks are cut and the holes made for the reception of the sticks, remains at that low temperature for twenty-four hours.

I think the defendant's process was not contemplated by the patent, and that the claims cannot be construed in such a manner as to include it.

The contention is made by the plaintiff that Burt's invention consisted of his discovery that if a stick is inserted into "partially" frozen material which has not been frozen to a point where, if pressure is applied, it will crack, the differential of temperature between the stick and the ice cream, as well as the friction caused by the insertion of the stick into the cream, melts the ice cream at the point of contact and thereby forms a wet film at the point of contact; and that, therefore, the ice cream should be refrigerated so as to refreeze the wet film and effect a physical bond between the stick and the ice cream.

But it seems to me that the plaintiff gets little comfort from its own expert, Mr. Veazey, for he said: "When you put a stick into a piece of Eskimo Pie, there is this melting of the ice cream body around the stick or at the surface of contact between the ice cream and the stick; and the coldness of the main part of the ice cream body will then recongelate this melted portion and cause a bond between the two, between the ice cream and the stick." And further:

"XQ58. The ice crystals contact with the stick because the stick is there in the ice cream and in a position to receive the ice crystals, isn't that correct? A. Well, if it is in the road of the growth of crystals they contact it, yes.

"XQ59. So that if the user of an Eskimo Pie placed a stick in it to keep his fingers clean, free from molten chocolate, as I understand your testimony, before he had finished eating the unit there would be some crystal formation on the stick? A. That is correct."

If Mr. Veazey is right, it would seem that the result of defendant's process is to effect a bond between the ice cream block and the stick independently of the placing of the blocks, after the insertion of the handles, in the refrigerator or hardening room for preservation. Burt's disclosure was one of refrigeration, it may be noted, not of hardened ice cream, but of "partially frozen" ice cream. The claims in suit must certainly be limited to such a process.

In the motion for a preliminary injunction made in this case and considered by Judge Campbell on substantially the same proof of defendant's process of manufacture as is here presented, he said: "Obviously the process of the patent in suit contemplates the placing of the handles in a body of edible substance fluid at normal temperatures which has not been completely frozen or hardened." This was the disclosure of the process patent.

It seems also to have been the view of the Court of Appeals of the District of Columbia, In re Burt et al., 58 App. D. C. 7, 24 F.(2d) 273. In that case the court had before it the application for the product patent on an appeal from the Commissioner of Patents who had denied the application. The court said: "Finally, Mr. Burt hit upon the idea of freezing the stick in the ice cream; that is, by inserting the stick in the cream before freezing and then subjecting the mass to refrigeration."

Now what the defendant did in this case was not to insert the stick in the cream before freezing. On the contrary, the defendant inserted the stick after the block was frozen, and thus found a solution of the problem, as stated by the Court of Appeals for the District of Columbia, which did not occur to Burt.

Accordingly, claims 1, 2, and 5 are not infringed.

### The Product Patent.

The product patent presents somewhat greater difficulty. The three claims in issue are the following:

"1. A frozen confectionery product including a frozen body portion formed of an edible substance which is fluid at normal temperatures and congeals by refrigeration, and a stick member partially embedded in the body portion and attached thereto by congelation, the projecting end of the stick member forming a handle."

"5. A frozen confectionery product including a frozen ice cream body portion, a penetrating handle member attached to the

body portion, and an outer protective covering surrounding the body portion and formed of edible substance which is comparatively hard and non-sticky at normal temperatures."

"7. A frozen confectionery product including a frozen body portion formed of an edible substance which is fluid at normal temperatures and congeals by refrigeration, and a stick member partially embedded in the body portion, and upon which the body por-. tion is congealed, the projecting end of the stick member forming a handle and the entire surface of the confection being completely exposed while being eaten."

The application for this patent was rejected by the Patent Office, and its action reversed by the Court of Appeals of the District of Columbia. In doing so it pointed out that it differed from the examiner, who held that it required no invention to combine the lollypop stick of the prior art and the Eskimo Pie of the prior art. The court was of opinion that: "It is one thing to insert a stick in a warm, soft, sticky substance, that by cooling will adhere thereto, and quite another thing to effect a strong union between a stick and a frozen substance." The examiner had held: " 'Merely because applicant's article appears to be new is no basis for the grant of a patent. A patent may not be granted on a new article, unless it is clear that it required the exercise of the inventive faculties to produce the article.' " Commenting upon this, the Court of Appeals of the District of Columbia wrote: "As admitted by the Patent Office, applicant has produced a new article, which has found public favor, and his useful and 'happy thought' should be recognized. The quoted claims protect his product, and his alone."

But before directly considering the question of validity, it is necessary first to meet the question of estoppel which has been raised.

■ The plaintiff contends that the defendant is estopped from attacking the validity of the patent because in a license agreement made with the Popsicle Corporation of America, under which it obtained the right, under the two patents in suit and other patents, to manufacture "confections comprising a body of flavored syrup, water ice, or sherbet (but not ice cream, frozen custard, and the like) frozen on a stick and embodying one or more of the inventions, etc.," the defendant undertook for such privilege "not to contest or deny in any way the validity of any of the above mentioned letters patent."

The license from the Popsicle Corporation to the defendant could be enforced only by the Popsicle Corporation of America. What its relationship is to the plaintiff does not appear from this record. Of course, the only parties who could sue for the breach of the license agreement are the parties to the agreement. After all, a license is just one form of contract. However, the suit at bar is not for the breach of the license but for infringement of the patents. I have been furnished with no authority in support of the plaintiff's position that the defendant, a sublicensee, is, in the circumstances, estopped from denying the validity of these patents. Certainly the cases cited by the plaintiff, Dunham v. Bent et al. (C. C.) 72 F. 60, Consolidated Rubber Tire Co. v. Finley Rubber Tire Co. (C. C.) 116 F. 629, 638, and Eskimo Pie Corporation v. National Ice Cream Co. (D. C.) 20 F.(2d) 1003, are not in point. Nor have I been able myself, after a laborious search, to find a case involving the right of a patentee to invoke the doctrine of estoppel against a sublicensee who covenanted with his licensor not to contest the validity of a patent. By no reasonable extension of the doctrine of Lawrence v. Fox, 20 N. Y. 268, can the doctrine of estoppel be invoked herein. In all good conscience it should not either, for the Popsicle license, *as is evident from its terms, is an agreement* which rigidly limits the Bluebird Ice Cream & Charlotte Russe, Inc., the defendant, to the manufacture of water ices and sherbets; and expressly excludes ice cream.

It may very well be that as part of the price or consideration to be paid to the Popsicle Corporation for the right to do certain things, the defendant was willing not to contest the validity of the patents as to products which they had no desire to manufacture. But that consideration moved directly to the Popsicle Corporation. If by raising the question of invalidity now the defendant has breached its contract with the Popsicle Corporation, that corporation may very well have a right of action for such breach; but as to the plaintiff there is no such privity as to enable it to pursue any rights against the defendant except those which arise out of the patent grant. And so accordingly we find that the plaintiff here is suing for the infringement of these patents and not for a breach of license. The defendant's interest was to acquire a right to do something quite other than that which is the subject-matter of this litigation. As against the plaintiff, I can find no authority in law or in equity which

would justify a holding that the defendant should be prevented from asserting any and all defenses against the plaintiff.

I pass then to the question of validity of the claims of the product patent. I think they set forth an aggregation and not a true combination; and under the doctrine of Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719, must be held invalid.

Carbice Corporation of America v. American Patents Development Co., 283 U. S. 420, 51 S. Ct. 496, 75 L. Ed. 1153, is likewise persuasive. There the court said: "Long prior to the date of the claimed invention, it was known that solid carbon dioxide, which has a temperature of 110 degrees below zero, is a refrigerant; that when it 'melts' it passes directly into a dry gas heavier than air, of like low temperature, which may serve as a refrigerant until its temperature rises to that of the outside air. It was known also that a frozen article—be it ice cream or solid carbon dioxide—will remain frozen longer if insulated; and that paper is an insulator. It was not invention to conclude that a cake of the solid dioxide wrapped in paper would remain solid longer if also surrounded by ice cream, than if placed in more immediate proximity to the walls of the container and thus to the outer air; or to conclude that the gas, being heavier than air would, as generated, drive the air out of the container, and thus serve as an additional insulator. Compare Hollister v. Benedict & Burnham Mfg. Co., 113 U. S. 59, 72 73, 5 S. Ct. 717, 28 L. Ed. 901; Dreyfus v. Searle, 124 U. S. 60, 63, 8 S. Ct. 390, 31 L. Ed. 352; Wilson v. Janes, 3 Blatch. 227, Fed. Cas. No. 17,811." The court said also: "Each of the elements —refrigerant material to be refrigerated, and container—performs its function in a known way."

Now applying that test to the claims of this patent, we find that "a frozen confectionery product including a frozen body portion formed of an edible substance which is fluid at normal temperature and congeals by refrigeration," is the well-known "Eskimo Pie" of the prior art. And the stick member supports the block of ice cream in the same way as the stick of the lollypop supported the jelly apple. In other words, it acts as a handle. In the aggregation of jelly apple and stick, the stickiness of the coating is the means of effecting the union of the members; in the aggregation of ice cream and stick, congelation is the means of effecting the union of the members.

Nor was Burt the discoverer of the congelation of two substances such as a frozen block and another member. Every lad who ever made a snow man and stuck a broom handle in it, and afterwards found it frozen, produced exactly the same result as Burt. There can be no invention in substituting a frozen confection for a block of snow. Mere substitution of materials is not invention. In Brown v. District of Columbia, 130 U. S. 87, 9 S. Ct. 437, 441, 32 L. Ed. 863, the court said: "The blocks of the Lindsay patent are of the same shape as those of Cowing, but are of stone, while the latter are of wood; but this was nothing more than the substitution of one material for another, without involving a new mode of construction, or developing anything substantially new in the resulting pavement. Hotchkiss v. Greenwood, 52 U. S. (11 How.) 248 [13 L. Ed. 683]; Hicks v. Kelsey, 85 U. S. (18 Wall.) 670 [21 L. Ed. 852]; Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486 [23 L. Ed. 952]; Phillips v. Detroit, 111 U. S. 604, 4 S. Ct. 580 [28 L. Ed. 532]." See, also, Vulcanized Fiber Co. v. Taylor (C. C.) 49 F. 744.

The defendant may have a decree dismissing the complaint.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.