## SWENSON v. BOOS.
### Civil Action No. 1093.

District Court, D. Minnesota,
Fourth Division.
June 22, 1945.

Andrew E. Carlsen, of Minneapolis, Minn., for plaintiff.

Charles V. Hildebrecht and Edward C. Grelle, both of Chicago, Ill. (F. A. Whiteley, of Minneapolis, Minn., of counsel), for defendant.

JOYCE, District Judge.

This is a patent infringement suit in which an injunction and an accounting is sought. Plaintiff is the owner of letters patent No. 2,095,535 concerning artificial teeth. Defendant operates dental laboratories and manufactures the alleged infringing teeth. Defendant's operations are closely connected with those of Austenal Laboratories, Inc., of New York and Chicago who, it is conceded, conducted the defense of this suit. Plaintiff is an authority on prosthetic dentistry and was formerly connected with the Austenal Company.

The nature of the patent is a pin-less or "diatoric" artificial tooth which is anchored in the plate or denture by means of cavities or recesses in the sides of the tooth into which the denture material is poured. When this hardens the tooth is firmly held in the denture. This type of anchorage is called interproximal retention. The patent covers only front or anterior teeth and contains two claims. The defenses are invalidity and non-infringement.

Plaintiff contends that the defense of invalidity is not available to defendant because of an estoppel by contract. The contract relied on is between plaintiff and Austenal. In brief, it grants to Austenal a license or option to exercise a license under two of plaintiff's patents (including the one in suit) upon the payment of certain royalties. Paragraph 21 of the contract reads:

"(21) The parties hereto mutually agree that neither of them shall during the continuance of this agreement, question or bring into question directly or indirectly the validity of any of the patents of the other party which relate to this agreement."

It is plaintiff's position that Austenal's assuming the defense of this suit places it and defendant in privity so that defendant is bound by the prohibition above quoted. I do not think this contention is sound. By undertaking the defense Austenal became a privy, but not a party, to the

suit and is bound by the determination of the issues litigated herein. Van Kannel Revolving Door Co. v. Winton Hotel Co., D.C., 263 F. 988; Freeman-Sweet Co. v. Luminous Unit Co., 7 Cir., 264 F. 107; Gulf-Smokeless Coal Co. v. Sutton, Steele & Steele, 4 Cir., 35 F.2d 433. But it does not follow that Austenal's becoming a privy to the suit makes defendant privy to the contract between Austenal and plaintiff to which defendant is not a party. There can be no estoppel by contract invoked against one who is neither a party nor privy to the contract.

In National Cash Register Co. v. Remington Arms Co., D.C., 283 F. 196, the determinative question was whether defendant was estopped from denying the validity of a patent. Plaintiff was the assignee of the patent; the assignor at the time of the suit was employed by defendant and was claimed to have cooperated with it in inventing and designing the alleged infringing machine. It was held that defendant was not estopped from asserting invalidity unless it was in privity with the assignor and their employer-employee relationship or the fact they might be joint tort feasors did not constitute privity. The court analyzed the case law thoroughly and among other things said:

"If plaintiff relies upon the contracts of Fuller [the assignor] with the plaintiff, Fuller becomes an indispensable party. He is a nonresident of this district, as is the plaintiff. As the doctrine of estoppel, if invoked, may exclude the truth, it should not, I think, be extended to persons to whom it is not clearly applicable." 283 F. 203.

Good Humor Corporation v. Bluebird Ice Cream & C. R., D.C., 1 F.Supp. 850 was a patent infringement suit where there was a covenant not to contest validity incorporated in a license between defendant and the Popsicle Corporation. Plaintiff sought to avail itself of this estoppel although the Popsicle Company was not a party to the suit. In holding adversely to this contention the court said [page 852]:

"If by raising the question of invalidity now the defendant has breached its contract with the Popsicle Corporation, that corporation may very well have a right of action for such breach; but as to the plaintiff there is no such privity as to enable it to pursue any rights against the defendant except those which arise out of the patent grant. * * * As against the plaintiff, I can find no authority in law or in equity which would justify a holding that the defendant should be prevented from asserting any and all defenses against the plaintiff."

I think these cases are applicable here. To invoke the estoppel against defendant it would be necessary to hold that Austenal was estopped and Austenal is not a party to the suit. If Austenal were not assuming this defense it could hardly be urged that defendant could not contest validity of the patent. In my view, this factor does not add to or detract from any of defendant's rights. It is therefore unnecessary to consider any of the collateral questions which were raised relating to this contract.

Plaintiff also contends that as defendant introduced no expert testimony of its own the court would be justified in not considering the prior art—citing Waterman v. Shipman, 2 Cir., 55 F. 982; Bell v. MacKinnon, 2 Cir., 149 F. 205; General Electric Co. v. Germania Elec. Lamp Co., C.C., 174 F. 1013; and Malignani v. Hill-Wright Electric Co., C.C., 177 F. 430. In all of these cases patents relied on as anticipations were introduced without any elucidation and the court refused to consider them. That is not the case here. Defendant relies principally upon the "Ash" tooth. Models, catalogues, diagrams and the actual teeth are in evidence. Plaintiff, himself, was cross-examined at length on the applicability of the claims in his patent to the Ash tooth, and in rebuttal fully discussed his contentions in this regard. I do not think any court would be justified in refusing to consider this evidence. In any event, the cases relied on by plaintiff antedate the Equity Rules of 1912, 28 U.S.C.A. § 723 Appendix, which, at least in the opinion of Judge Learned Hand, supersede them. Kohn v. Eimer, 2 Cir., 265 F. 900.

On the question of anticipation I am confining my consideration to the Ash teeth. The evidence is conclusive that such teeth were manufactured in England, were described in printed publications, and were known and used in the United States more than two years prior to plaintiff's patent application within the meaning of R.S. Sec. 4886, 35 U.S.C.A. § 31, which is applicable here. These teeth were not cited against the application which resulted in the patent in suit.

Certain technical terms are used in the patent claims which require definition. As so used, "lingual" means the rear or tongue

706

side of the tooth; "labial" means the front or lip side; "incisal" is the cutting edge; "gingival" is the top or gum side; "mesial" refers to the side of the tooth toward the center of the mouth; "distal" refers to the side away from the center of the mouth. Claim 1 reads:

"An anterior artificial tooth having (a) substantially complete lingual and labial surfaces and (b) a substantially complete base portion having a base wall extending from the labial gingival to the lingual surface, (c) the labial portion being formed with a substantially vertical inner wall extending inwardly from the mesial and the distal sides and (d) the lingual portion being formed with an incisally inclined inner wall extending from the mesial and distal sides and intersecting said inner labial wall, (e) and the mesial and distal side walls of the base portion tapering inwardly toward said incisal portion from said base wall and intersecting said labial and lingual inner walls, thereby forming (f) an inwardly and incisally tapered recess at each side of the tooth, (g) said recesses being suited readily to receive the flow of the base material of the denture during molding, whereby the tooth is firmly interlocked in the denture by a pair of tapered gripping projections composed of the denture base material." (The letters above are inserted for clarification and separate discussion).

The Ash tooth is similar in appearance to the patented tooth and obviously invokes the same principle of retention in the denture; i. e. it is held in place by the denture material solidifying in the recesses in the sides of the teeth. This principle was not new in the art as is disclosed by a number of the other patents cited. The Ash tooth has substantially complete surfaces and the labial portion of the base is formed with a vertical inner wall and the lingual portion with an incisally inclined inner wall to the same extent as in the patented tooth. The side walls of the base portion also taper inwardly and downwardly to form the recesses in exactly the same manner as in the patented tooth. The only part of the claim which presents a serious issue is that which reads:

(b) "A substantially complete base portion having a base wall extending from the labial gingival to the lingual surface,"

The application of this language to the Ash tooth was a matter of sharp dispute at the trial. Plaintiff testified concerning it at considerable length with the use of a prepared chart and manuscript. The base portion of the Ash tooth has a hump or jog near the lingual portion while plaintiff's tooth does not. The degree and size of this hump varied between the different Ash teeth in evidence. On those used by plaintiff for his diagram it is more marked than on the actual teeth in evidence on which defendant relies. It is also conceded that when any of the teeth are fitted to the individual a certain amount of grinding may be necessary which would tend to decrease this variance between the two types of teeth. Plaintiff testified that the Ash tooth would require much more grinding than his although he had never worked with Ash teeth. The materiality of this line of testimony is doubtful as it is the claims of the patent which define the invention. Altoona Publix Theatres v. American Tri-Ergon Corp., 294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005; White v. Dunbar, 119 U.S. 47, 7 S. Ct. 72, 30 L.Ed. 303.

After careful consideration of all the evidence, it is my conclusion that while neither tooth has a complete base portion, the term "substantially complete base portion" is applicable to both. Both also have a "base wall extending from the labial gingival to the lingual surface." In neither tooth is this base wall uninterrupted and the interruption, if I may so term it, is slightly more marked in the Ash tooth. I believe the difference is of degree only and not of kind and that there is no patentable distinction between the two.

Claim 2 of the patent is in similar language to claim 1 with two further limitations which read:

(h) "That portion of the base wall to the rear of the labial portion of the tooth being reduced substantially in width," and (i) "The lingual portions of the tooth being formed with an incisally inclined inner wall extending from the lingual gingival toward the incisal edge * * *".

The base wall in both teeth at the rear of the labial portion is reduced by approximately one-half. The rest of the base wall toward the lingual surface is circular in the patented tooth and rectangular in the Ash tooth. There is no showing that this is a material factor and the language of the claim is broad enough to cover either. The language above quoted under (i) is simply a further clarification describing the walls which form the recesses at the side of the teeth, which as mentioned above, are substantially the same in each.

■ For the reasons given above I reach the conclusion that the claims of the patent in suit were anticipated by the Ash tooth and did not constitute patentable invention, as a consequence of which the patent is invalid. It is therefore unnecessary to consider the question of infringement. Judgment will be for defendant whose counsel will submit findings of fact and conclusions of law in accordance with the views expressed in this memorandum, of which the memorandum will be a part.

Plaintiff is allowed an exception.