## CONSOLIDATED MIDDLINGS PURIFIER Co. *v.* GUILDER.

*(Circuit Court, D. Minnesota.  October, 1881.)*

1. LETTERS PATENT—ASSIGNMENT—ESTOPPEL.

   An assignor of a patent, who had agreed to stop manufacturing the patented machines and had paid a license fee, agreed upon, to his assignee for the privilege of selling machines he had on hand, is estopped from denying its validity, in a suit against him by the assignee for its infringement, by manufacture and sale under letters patent issued subsequently to the assignment.

2. SAME—MIDDLINGS PURIFIERS.

   Reissue No. 8,386, and letters patent No. 225,218, are substantially for the same machine.

*R. Mason* and *J. B. & W. H. Sanborn,* for complainant.

*Shaw, Levi & Cray* and *R. C. Benton,* for defendant.

NELSON, D. J.  A motion is made upon bill and affidavits for a preliminary injunction *pendente lite.* The defendant resists the application upon affidavits, and since the notice of motion an answer is filed, which, under the rule, is used upon the hearing as an affidavit with the others presented. The bill is filed for an account, and to recover damages for an infringement of certain letters patent granted for improvements in purifying and dressing middlings, and owned by the complainant, and a permanent injunction is prayed for. The bill of complaint sets up several patents, and charges the defendant with infringing each of them.

The complainant on May 29, 1879, purchased and took an assignment of all patents owned by defendant, among them reissue No. 8,386, under the following circumstances:

The defendant was manufacturing machines for purifying middlings under letters patent, and the complainant, believing that he was trespassing upon its rights, had an interview through an agent, when a settlement was perfected. The complainant agreed to give $5,000 for all the patents owned by the defendant if he would stop manufacturing and quit the business, and also agreed to permit the defendant to sell certain machines he had made on payment of a royalty, which the defendant accepted. An assignment was executed, and delivered to the firm of which the agent was a member, of defendant's patents, which were finally assigned by said firm to the complainant, and the defendant has paid the royalty exacted for the machines on hand, and for some time stopped manufacturing. On March 9, 1880, letters patent No. 225,218, "for an improvement in middlings purifiers," was granted defendant, and he commenced to manufacture under this patent, and has been selling machines.

The defendant, in his answer, admits that he made a full assignment of the patents owned by him, including reissue No. 8,386, to the firm of Bennett, Knickerbacker & Co., but denies that he agreed to quit the business of manufacturing purifiers; and also alleges, among other things, that reissue No. 8,386 is invalid, and that the claims therein made by him were expanded beyond the original invention.

It satisfactorily appeared on the hearing that Knickerbacker, who conducted the negotiation with the defendant, was duly authorized to act for the complainant, and that he conducted the same on its behalf; and also that, as a part of the settlement made, the defendant agreed to stop manufacturing, and the payment of royalty for machines on hand is not denied.

On the facts as thus established the defendant, in my opinion, cannot set up as a defence the invalidity of the assigned patents. He was not ignorant at the time of the settlement, and when he made the assignment, of all the facts which are set up in his answer, and he knew of the existence and full mechanism and operation of the machines now alleged by him to have anticipated one, at least, of those assigned the complainant; and, having made the agreement above stated, and paid royalty for license to sell, it would be inequitable to permit such a defence now to be made. He, of course, is free to exercise his inventive genius, and manufacture and sell any improvements for which he may secure letters patent, provided he does not infringe the complainant's rights. On this motion, in the view taken by the court, the fourth claim only of letters patent reissue No. 8,386 will be referred to in connection with No. 225,218, and the issue of infringement considered, and to do this satisfactorily,

and determine whether defendant is a trespasser, an examination of the Guilder patent and reissue is necessary.

Guilder's patent—reissue No. 8,386—claims:

"(4) The combination, with a$^1$ reciprocating riddle or shaker of a$^2$ brush moving transversely across the entire under surface of the riddle, and independently of the movement of said riddle, substantially as and for the purposes set forth."

In his specifications he states—

"That his invention has relation to machines for purifying flour and middlings, wherein a suction fan and adjustable suction spouts are arranged over a riddle and endless conveyers, arranged beneath the riddle. * * * It also consists in the employment of detachable brush carriers or brush holders, which hold the brushes in contact with the under side of the riddle during the upper part of their revolution."

" It also consists in giving to the said brushes a continuous transverse motion across the bottom of the said riddle."

He afterwards describes the function of the brushes:

" Beneath the riddle, C, is a transverse division, H, which leaves * * * a space, J, on one side of it, for the material, which passes first through the riddle and a space, J prime, for the coarser material, which passes afterwards * * *. In each space or compartment (J, or J prime) are single-row dusting brushes, which are arranged to sweep across the bottom of the riddle cloth, from side to side, so that they move at right angles to the material in its passage over the riddle, thus avoiding the mixing of the different grades of the material and keeping the cloth clear."

This patent is for a new combination of old elements, and the brushes are so arranged that the meshes of the riddle cloth are kept clear, and at the same time the brush, moving transversely at right angles to the flow of the material, prevents the mixing of the coarser with the finer middlings. In other previous combinations the brush, moving in the direction of the flow of the middlings, would carry some of the coarser middlings with it and deposit them in the compartment containing the finer middlings.

In Guilder's patent, No. 225,218, issued in March, 1880, which is the machine manufactured, and is alleged to be substantially the old patent, reissue 8,386, with some additional contrivances, he claims:

" (5) The combination of the reciprocating bolt, $Gg$, and transversely moving brush, K, having a longitudinal reciprocating motion, substantially as and for the purpose described."

In the specifications he describes the operation of purifying middlings in the machine, and the function of the various contrivances and mechanism used, which it is not necessary to set forth, except what is said about the brush, which is this:

"K is a brush·longitudinally under the bolt cloth, *g*, the bristles of which are fast in the stock, K prime; *k k* are supports to the brush stock; * * * L is a transverse guide stock attached to one of the supports, *k k*, and has secured upon its upper edge·a corrugated guide plate, *l*, that goes between two friction rollers on downward projecting studs on the under side of brush stock, K prime."

This brush stock is attached to endless chains, and travels with them in a transverse direction across the entire width of the bolt cloth in the corrugated or bent guide plate, and so moving gives the brush a longitudinal 'or endwise motion of several reciprocations while in contact with and sweeping across the bolt cloth, and when a current of air, by means of a suction fan, is passing through the middlings. This motion in two directions, vibratory while in contact with the bolt cloth, is said to be more effective in clearing its meshes from adhering substances.

If it is conceded that the zigzag motion given the brush, while moving transversely across the under side of the bolt cloth, makes its operation more effective, and the device of a corrugated guide renders the brush more serviceable, still the brush, in combination with the reciprocating sieve or bolt cloth in No. 225,218, moves transversely across the under side of the bolt cloth, at right angles to the material, in its passage, and performs the same function, and keeps the cloth clear, substantially as in No. 8,386. The fact that the brush, while crossing, is given what is called a longitudinal reciprocating motion, does not render the combination different from his previous patent. It embodies the substantial idea therein set forth. It may be better to adopt the motion given the brush by defendant, and he may be able to prevent the use by others of his device; but in the use of the combination described he violates his agreement with plaintiff. The identity of the two patents sufficiently appears; and, although there has been no judicial decision in favor of the validity of reissue No. 8,386, a preliminary injunction must be granted, unless the defendant gives bond in an amount large enough to pay the royalty on each machine manufactured by him, as shall be determined hereafter.

It is so ordered.