## ACE COMBUSTION ENGINEERING COMPANY, Inc., v. SHREVEPORT FOUNDRY & MACHINE CO., Inc., et al.

District Court, W. D. Louisiana, Shreveport Division. Aug. 24, 1928.

No. 317.

Jas. G. Palmer, of Shreveport, La., and Lee B. Kemon and William W. Dodge, both of Washington, D. C., for complainant.

Clifton F. Davis, of Shreveport, La., for respondents.

DAWKINS, District Judge. Complainant alleges itself to be the owner, through proper assignments, of letters patent No. 1,-625,992, granted to Godsey-Murphy Company, Inc., April 28, 1927, pursuant to an application filed by H. Mitchell Godsey on September 14, 1923. As finally granted the patent rested upon a single claim as follows: "A gas burner comprising a block, a gas chamber adapted to receive a gaseous fuel and supported in spaced relation to the inner end of said block, the space between said block and said chamber being open to the atmosphere, said block having a plurality of Venturi passages formed therein and extending from said air space to the outer end of said block to form burner ports, said block also having a plurality of air passages arranged to conduct air to the outer end of said block adjacent said burner ports, and a plurality of discharge ports for said gas chamber adjacent said air space and directed towards the inner ends of said Venturi passages to discharge streams of gas through the space and into the Venturi passages."

Diagrams of the drawings of the invention, with copy of the specifications, are attached hereto and will be printed in the margin of the reports.[1]

Complainant further alleges that respondents are infringing said letters patent by making and selling the identical structure. It prays for an injuncion and accounting in the usual manner.

Respondents attack the validity of the patent for want of novelty or invention, further averring that the complainant has never manufactured or sold burners according to the claim and specifications of the patent, but an entirely different structure. They further "admit they have manufactured and sold burners described in the leaflet attached to the petition as alleged in paragraph '14' of the bill, defendant Shreveport Foundry & Machine Co., Inc., doing the manufacturing and both doing the selling, defendant Murphy receiving a commission for his services in such sales, but they deny that such burners infringe the patent sued on by plaintiff, and they aver that said Company manufactures a number of other styles of burners."

They further set up some 40 patents issued to specifically named patentees over the

[1] See note at end of case.

period from 1874 to 1921, as anticipating and disclosing all of the elements of complainant's structure; without, however, pointing out in any manner in the answer the pertinency of these numerous references. It is also charged that the claim as finally allowed covered subject-matter not contained in the original application, and hence was not accompanied by the necessary supporting oath. In the alternative, if said patent is not held invalid, respondents aver that in view of the prior art and the patents cited, the one in suit "cannot be given an interpretation which will bring the burner complained of, or any of the burners manufactured and sold by defendants, within the scope thereof."

The respondents aver further that complainant has wantonly and maliciously interfered with their customers by informing them that all of the burners manufactured and sold by respondents were infringements upon complainant's patent, regardless of the fact that many of them were entirely dissimilar to that of complainant, causing cancellation of orders and refusal to pay for purchases by said customers; that respondents have expended large sums of money in perfecting and improving the burners so manufactured and sold; and that the conduct of complainant has seriously injured the business of respondents, for which they have no adequate remedy at law.

Respondents prayed that the complainant be enjoined from interfering with their business in the manner indicated and from bringing any other suits under said letters patent, No. 1,625,992; for damages and such other relief as might seem just and proper. Further: "Defendants therefore deny that plaintiff is entitled to the relief demanded in its bill of complaint or any relief whatsoever, and they pray that the complaint be dismissed with costs."

### Opinion.

The main feature of complainant's structure, as disclosed in the specifications and claim and as emphasized in the correspondence with the Patent Office, was the use of both primary and secondary air to form at the point of ignition within a furnace a gaseous mixture producing, as it is claimed, a high degree of combustion; the object being to conserve fuel, such as natural gas, and to produce greater heat. This the patentee sought to accomplish by a combination of the old Bunsen principle of conveying into the furnace gas mixed with (primary) air, drawn from the atmosphere as the gas passes from the chamber below into tubes placed immediately above but separated by the open air from the gas chamber, with what it is claimed was new, to wit, the transmission of additional (secondary) air to the outer or port ends of said tubes within the furnace, where combustion takes place, in such manner as to produce, as it is claimed, greater efficiency in heat and saving of fuel. As originally disclosed and shown by the drawings in the margin, the openings for conveying secondary air to the port ends of the gas tubes were parallel passages, the openings of which can best be described as resembling a four-pointed star. However, shortly after commencing manufacture, this means was abandoned; that is, the openings between the gas tubes were closed and the secondary air was admitted through passages from the outside formed by either inclosing the block in a case of the same metal, cast iron, held apart from the tubes by ribs moulded integrally with and running longitudinally with the pipes, or by inserting the block into the furnace wall in such a way that the sides of the latter would perform the function of the casing, i. e., produce orifices or openings for the admission of secondary air. The complainant also manufactures some of its structures with nondetachable casing; that is, the casing and block of tubes are molded, with ribs running along the center of the gas tubes on the tops and bottoms and joined to the sides of what correspond to the upper and lower sides of the casing so as to form openings for the passage of secondary air from the outside to the port ends of the burner tubes in the furnace.

The last-described structure is substantially that which the respondents are making and selling, and which it is claimed infringes the patent of plaintiff.

### Validity of the Patent.

It is claimed by respondents that all the elements of complainant's structure are old, being disclosed by the prior art as appears from the numerous cited patents. No attempt was made on the part of respondents to analyze the 40-odd references, but the Patent Office folders were simply dumped into the record, and counsel attempts in brief to point out the features of anticipation and disclosure. I shall therefore discuss only those which appear to me to have any pertinency to the issue here, to wit: Ashcroft, No. 328,914, October 27, 1885; Denayrouze, 684,921, October 22, 1901; Denayrouze, 736,943, August 25, 1903; Quinlan, No. 1,164,210, December 14, 1915; Humphrey, No. 1,245,347, November 6, 1917;

and Humphrey, No. 1,396,210, November 8, 1921.

Ashcroft, in his specifications, states the general nature of his structure as follows: "My invention therefore consists in a separate air chamber or chambers and separate gas chamber or chambers, said air chamber or chambers being provided with numerous apertures, through which the air and tubes or ducts from the gas chamber pass, whereby the vacuum caused by the entrance of the gas into the combustion-chamber will draw in with it the requisite amount of air to effect a complete combustion of the gases in the furnace or combustion chamber."

The object which he sought to accomplish was undoubtedly the same as that of Godsey, original applicant for the patent in suit; but his structure consisted of two separate chambers running the full length of the floor of the furnace, the first or lower one to receive gas in large quantities, and the second and larger chamber above that for the gas and separated from the combustion compartment by the floor of the furnace. Numerous straight pipes or tubes extended up from the gas chamber through the air chamber with their outer openings below the surface of the furnace floor. The holes opening into the furnace were somewhat larger than the gas tubes, so, as expressed in the specifications, the air might be drawn into the furnace by the vacuum created by the gas flowing upward from the outer ends of the tubes. The gas tubes were also inclosed by larger pipes with openings at the bottom, entirely separated from the flow of gas, through which additional air was permitted to pass from a passage leading to the outside, independent from the main air chamber; the object being, as expressed in the specifications, to cool the gas pipes. It is thus seen that there was no "primary" air used or mixed with the gas before it reached the furnace chamber, whereas the secondary air was received from a large compartment surrounding all of the gas pipes, the amount passing into the furnace for mixture with the gas being controlled by the efficiency of each separate burner; whereas, in the complainant's structure, each gas tube has its secondary air passages, delivering the same at the port ends of the gas tubes, the gas itself having been previously mixed with the primary air which passes in through the Venturi tubes according to the Bunsen principle. Besides this, it is claimed that the Venturi shape of complainant's gas tubes, as distinguished from the straightsided ones of Ashcroft, affords an additional advantage in the mixing of the gas with the primary air.

It appearing that the patent of complainant is a combination of old elements alleged to produce a new, useful, and improved function, it is clear that the Ashcroft structure, standing alone, cannot be said to have anticipated it.

Denayrouze, No. 328,924, covers a *"Burner For Incandescent Gas Lights * * ** the object being to obtain a more brilliant light with a smaller consumption of gas." It had nothing to do with the heating of a furnace or the producing of power for operating machinery, and while Godsey could not obtain a valid patent upon the simple adaptation of the Denayrouze structure to the latter purpose, still this difference becomes important when considering the purposes to be accomplished by the two inventions. The structure under discussion also uses the Bunsen principle for mixing gas and air as it is borne into the cylindrical tubes. This mixture is delivered into a larger chamber or compartment, above which has across its top a screen or mesh to prevent the gas burning back into said compartment. The glass globe or chimney, considerably larger than the top of the screen-covered chamber, is fitted on air-tight at the bottom, with straight sides entirely open to the atmosphere at the top. There is also used inside this globe a mantle for controlling the flame, and Denayrouze, in his specifications, describes the process as follows: "According to the form of my invention set forth in my said application I divide such Bunsen flame by a foraminous or gauze screen placed horizontally shortly above where the apex of such dark core would occur and confine the ignition to the space below the screen in an envelop or shell conforming approximately to the shape of the lower and expanding portion of such flame, (see Fig. 2 of said patent) whereby this space below the screen constitutes a mixing-chamber adapted to effect an intimate admixture of the gas and air, which mixture on issuing through the interstices of the gauze screen burns in a solid or coreless flame, which is enveloped by the mantle. The heat thus generated is very great, and the mantle is raised to a luminosity greatly exceeding that of an ordinary Welsbach mantle in burners heretofore constructed. The burner will burn without a chimney by reason of the perfect mixture of the gas and air. The use of a chimney, however, arranged so that the suction created thereby acts mainly upon the air which must pass into the mantle further

improves the mixture and increases the velocity of the mixture beneath the mantle, thereby increasing the luminosity."

It is thus seen that the object accomplished is a more brilliant light and saving of gas by mixing the gas and air in the mantle beyond and above the upper end of the screen-covered gas chamber; whereas, the purpose of the Godsey burner is to supply the secondary air to the outer ends of the gas tubes which convey the primary mixture to that point according to the Bunsen principle. With the latter structure there is combined the element of the inclosed furnace which is not open to the air as is the top of the chimney in Denayrouze, regulated, of course, by the damper in the smokestack, but which is important in the matter of efficient combustion sought by Godsey. Then, too, there must be considered the simplicity of complainant's structure, which needs only to be inserted into the furnace in the manner indicated to attain fixed and permanent results, while the effectiveness of the Denayrouze burner is dependent upon the presence and relation of the screen, mantle, etc., by which the brighter flame is produced considerably above the point of outlet of the gaseous mixture from the chamber into which the gas tubes empty. Then, too, there must also be considered the element of the Venturi shaped tubes in Godsey (absent in Denayrouze), which it is claimed adds to the efficiency of his structure over Denayrouze.

In my opinion the difference is sufficient, when considered in connection with the purposes of the two structures, together with the simplicity of the Godsey burner, to constitute patentable invention.

Quinlan is merely an adaptation of the Bunsen principle to furnace burners, using straight tubes, but with adjustable sleeves between these and the gas receptacle, so that the quantity of primary air taken in with the gas may be regulated by adjusting the sleeves, i. e., sliding them further from the holes in the gas chamber or drawing them closer to it, even to the extent of cutting off entirely the entry of primary air from the outside by extending the sleeves to the surface of the chamber. There is no use of secondary air whatever.

Humphrey, No. 1,396,210, is likewise for a gas burner in open grate heaters which uses the Bunsen principle, and does not involve the supplying of secondary air, as in the case of structures like that of complainant intended for power-producing machinery. ■ A careful consideration convinces me that none of the cited structures embrace either separately or in combination the distinguishing features of the Godsey patent, i. e., the use of both primary and secondary air at the port ends of the burner tubes so as to obtain the desired efficiency of combustion claimed for the Godsey burner. It might even be conceded that all of the elements can be found in the former art, yet if their combination had not appeared before, and in this instance produces a new and useful result, then invention must be sustained under the rules applicable to a combination patent. Walker on Patents (5th Ed.) § 66; Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68; Parks v. Booth, 102 U. S. 104, 26 L. Ed. 54; Imhaeuser v. Buerk, 101 U. S. 647, 25 L. Ed. 945; Seymour et al. v. Osborne et al., 11 Wall. (78 U. S.) 516.

■ The respondents insist that because in the burner now made by complainant the avenues for applying secondary air are not tubes running through the block between the gas pipes, as shown in the drawings annexed to the application, but are formed in the manner above pointed out, that is, by ribs extending along the sides of the gas tubes resting against the envelope or casing, or the furnace walls, this is such a departure as cannot be protected under the claim of the patent. However, it seems to me that the principle of equivalents is clearly applicable, and the idea is one which would readily suggest itself to those experienced in the art. In other words, if complainant were still using the identical form shown in the drawings and respondents had attempted, as they are now doing, to use the structure which both are putting out, then undoubtedly there would have been infringement under the doctrine of mechanical equivalents. 30 Cyc. p. 855, verbo Patents, and authorities cited. The language of the claim as above quoted, when read in connection with the specifications, is easily susceptible of an interpretation broad enough to cover both. Neither do I think that there is anything in the contention that the claim as finally allowed was not supported by proper oath. There was no change in the idea or result sought in the original application, but merely the adoption of more appropriate language to express it as developed through the correspondence with the Commissioner. John R. Williams Co. et al. v. Miller, Du Brul & Peters Mfg. Co. (C. C.) 107 F. 290; Keasbey & Mattison Co. v. Philip Carey Mfg. Co. (C. C.) 139 F. 571; Railway Register Mfg. Co. v. North Hudson Co. R. Co. et al. (C. C.) 24 F. 794; Automatic Recording Safe Co. v. Bankers' Registering Safe Co. (D. C.) 224 F. 506.

Respondents have made one of their structures to consist of a single large Venturi tube with ribs and a collar or cuff to take the place of the sides of the casing or furnace in forming the passages for supplying secondary air, but this does not serve to avoid infringement, inasmuch as all of the elements of the Godsey patent are used. Huntington Dry-Pulverizer Co. v. Whittaker Cement Co. (C. C.) 89 F. 323. They have also added a feature by which the space between the gas chamber and the Venturi tubes may be diminished or increased as in Humphrey; but this is also without avail for the purpose of avoiding infringement, since they continue to use all of the elements in the complainant's structure. Walker on Patents (5th Ed.) § 347.

Plaintiff has alleged estoppel against both respondents in their attack upon the validity of the patent in suit, based upon the following facts:

On January 14, 1925, before the patent of Godsey had been allowed, he conveyed to Louis A. Murphy an undivided one-half interest therein, and a corporation known as the Godsey-Murphy Company, Inc., was formed by the two, in whose name the patent was finally issued; Murphy thereby becoming one of the assignors in title to the present complainants. In an exhibit attached to the original petition, there is a picture of the alleged infringing structure of respondents, which they admit manufacturing and selling, upon the gas chamber of which is stamped the words, "Barber-Murphy Burner, manufactured by Shreveport Foundry & Machine Co., Shreveport, Louisiana, No. 12," which clearly discloses along with other evidence in the record that Murphy, after severing his connection with the Godsey interest, had gone into association with the Shreveport Foundry & Machine Company, Inc., which had for a long time manufactured structures of complainant's predecessors in title, for the purpose of putting out the infringing burners in competition with complainant's in the same territory. The relations shown between the defendants, therefore, in my opinion are such as to constitute estoppel against their present attack upon the validity of complainant's patent. Consolidated Middlings Purifier Co. v. Guilder (C. C.) 9 F. 156; Continental Wire Fence Co. v. Pendergast (C. C.) 126 F. 381; Siemens-Halske Elec. Co. v. Duncan Elec. Mfg. Co. (C. C. A.) 142 F. 157; Mellor v. Carroll (C. C.) 141 F. 992; Walker on Patents (5th Ed.) § 469.

My conclusion is that complainants are entitled to the relief prayed for, and a proper decree may be presented.

Note.—The following diagrams represent the drawings of the Godsey patent, No. 1,625,992:

The specifications of the same patent are as follows:

My invention relates to appliances for burning gas efficiently and economically in boiler or other furnaces for which it is suitable. It relates more particularly to an appliance for burning natural gas of a heat value approximating one thousand British thermal units per cubic foot, although it may be suitably proportioned to handle any fuel gases of other heat values satisfactorily.

An object of the invention is to provide a burner with which the greatest economy may be produced with the use of gaseous fuels, and such economy maintained permanently by the use of the simplest means possible to be provided for attaining the highest furnace efficiencies.

A further object of the invention is to provide a gas burner which embodies the greatest simplicity of construction and thereby reduces the cost to manufacture to the lowest minimum.

In the accompanying drawing, Figure 1 is a longitudinal section along the line A—A of Figure 2. Figure 2 is a plan, and Figure 3 is an end or front elevation.

The numeral 1 represents a block, preferably of cast iron, which is the main body of the burner, and 2 refers to mixing tubes, preferably of the Venturi type so as to produce the best air inspirating and mixing effect. The latter are represented in Figure

2 by dotted lines and are to be cast or shaped integral with and through the block 1. Numeral 3 is a hollow chamber which extends in length the entire width of the tube block and is joined to the latter by members 4 at each end of the chamber and side of the block, being cast or formed between the chamber and block in such a way as to hold these rigidly in place and leave an open space for the entrance of air from above and below the burner, the block and chamber and this member being preferably cast in one piece to form or constitute the burner as a whole. Numeral 5 refers to small gas ports or orifices drilled through the front wall of the chamber 3 and opposite the center of each mixing tube, 2 and 6 are ports or openings at each end of the chamber, preferably round and tapped with suitable pipe threads in order to connect the main gas supply pipe to the burner-chamber at either or both ends. Numeral 7 represents passages of some convenient form and size (shown only in Figure 3) formed in the block 1, and adapted to conduct secondary air through the burner into the furnace and to points adjacent the burner ports; and 8 refers to the space or opening between the chamber and block for the entrance of both primary and secondary air.

In operation, gas enters and fills the chamber 3 through either one or both of the ports 6 and is allowed to escape through the orifices 5. The latter being proportionately very small in comparison to the volume of gas entering and filling the chamber 3, pressures may be rapidly built up in the latter. Any appreciable pressure measured in inches of water built up in chamber 3 will cause a relatively high velocity of flow through the orifices 5 and into the tubes 2, which will create the well known Bunsen effect of mixing the gas and air into a highly combustible mixture so that the latter, when ignited, burns at the end of the tubes with the characteristic blue flame of a well proportioned gas and air mixture.

As it is practically impossible to construct a gas burner of this type so proportioned that under all conditions of gas pressures and furnace drafts the flame will not either tend to flare back and burn inside the burner or leave the end of it entirely, without the use of so-called secondary air, I have provided the air passages 7 (shown only in Figure 3) which extend through the tube block parallel with the tubes, in order to allow a sufficient supply of secondary air to flow to points adjacent the outer ends of the mixing tubes, or to the burner ports in addition to the primary air drawn in through the burner tubes. Such secondary air has the effect of balancing the mixtures with the rate of flame propagation, thereby stabilizing the flame at the end of the burner.

In the drawings I have shown a convenient size or arrangement of the tubes and air passages for an eight tube unit. One of these units may be used on a furnace if found sufficient by connecting the gas supply line to one end and plugging the other, or it may be connected into both ends; or two or more units may be connected together by suitable pipe fittings in order to form a set or one large burner to be controlled by one valve. It is to be understood, however, that these units may be varied in this respect by being built to form any number of pairs of tubes such as two, four, six, eight and twelve tubes to the unit; and that the particular arrangement as shown in the drawing will not be strictly adhered to, and that the following claim specifically states what my invention actually constitutes.

I claim:

A gas burner comprising a block, a gas chamber adapted to receive a gaseous fuel and supported in spaced relation to the inner end of said block, the space between said block and said chamber being open to the atmosphere, said block having a plurality of Venturi passages formed therein and extending from said air space to the outer end of said block to form burner ports, said block also having a plurality of air passages arranged to conduct air to the outer end of said block adjacent said burner ports, and a plurality of discharge ports for said gas chamber adjacent said air space and directed towards the inner ends of said Venturi passages to discharge streams of gas through the space and into the Venturi passages.